IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Uhlig, LLC, ) | |
| ) | Civil Action No. 6:08-1208-HFF-WMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| John Adam Shirley, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the plaintiff's amended motion for temporary restraining order and preliminary injunction and for expedited hearing (doc. 55). On May 19, 2008, the Honorable Henry F. Floyd, United States District Judge, referred the motion to this court for a recommendation. The defendants filed opposition, and a hearing on the motion was held on May 23, 2008.

In determining whether to grant injunctive relief prior to trial, a court must consider:

(a)  The plaintiff's likelihood of success in the underlying dispute between the parties;

(b)  whether the plaintiff will suffer irreparable injury if the injunction is not issued;

(c)  the injury to the defendant if the injunction is issued; and

(d)  the public interest.

*Scotts Company v. United Industries Corporation*, 315 F.3d 264, 271 (4th Cir. 2002); *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 193 (4th Cir. 1977). The court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction were to be denied; if so, then the court must balance the likelihood of

harm to the plaintiff against the likelihood of harm to the defendant if the injunction were issued. *Scotts*, 315 F.3d at 271. If the balance tips decidedly in favor of the plaintiff, "a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus more deliberate investigation." However, if the balance does not tip decidedly there must be a strong probability of success on the merits. *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812-13 (4th Cir. 1991). Lastly, the court must evaluate whether the public interest favors granting preliminary relief. *Id.* at 814.

In a report issued May 13, 2008, this court recommended that a temporary restraining order be granted to the plaintiff.[1] On that same date, the plaintiff filed an amended motion for temporary restraining order and preliminary injunction and for expedited hearing. The basis for the amended motion was the plaintiff's recent acquisition, from defendant Shirley, of a signed Noncompetition Agreement. The plaintiff amended its complaint to add a claim of breach of contract based upon the agreement.

In the Noncompetition and Nonsolicitation Agreement at issue, defendant Shirley (also referred to herein as "defendant") is identified as "the employee," and Cox CustomMedia, Inc. is identified as "the Company." The agreement includes noncompetition, nonsolicitation, and confidentiality provisions. The agreement specifically provides that the "covenants, terms and provisions set forth herein shall inure to the benefit of and be enforceable by the Company, its successors, assigns and successors-in-interest, including, without limitation, any corporation with which the Company may be merged or by which it may be acquired" (Noncompetition Agreement ¶ 8).

---

[1]Defendant Shirley argued that a document relied upon by the plaintiff in the hearing on May 7, 2008, which was referred to as "Exhibit 50," had not been previously provided to him and thus he could not respond to it. Accordingly, any reference to this exhibit is hereby excluded from the record.

2

Clearly the plaintiff will suffer irreparable injury if the injunction is not issued, as it has already lost three of its top customers. Defendant Shirley argues that the balance of harms tips decidedly in his favor. However, as this court stated in making its recommendation on the plaintiff's original motion, while the injury to the defendant if the injunction is issued could be substantial, this court has attempted to buffer any such injury by recommending that defendant Shirley be allowed to keep any customers whom he has already engaged to service and further be allowed to do business with customers of Cox CustomMedia and/or Uhlig, LLC, should they contact him for service. Further, this court is recommending that defendant Shirley be enjoined from soliciting business from only those customers about whom he took information from the plaintiff. This court finds that the balance of harms tips decidedly in the plaintiff's favor.

Defendant Shirley argues that the plaintiff cannot show a likelihood of success on the merits because it has no standing to assert a claim based on the Noncompetition Agreement. As noted above, the agreement includes a specific provision stating that the agreement is enforceable by Cox CustomMedia's successors-in-interest. Further, the Asset Purchase Agreement includes a provision stating that "all other contracts, agreements, . . . owned or acquired by [Cox CustomMedia] at or before the Closing Date and relating to [Cox CustomMedias] business" are included in the purchased assets (Asset Purchase Agreement § 1.3(g)). Accordingly, this court finds that the plaintiff has raised questions going to the merits on this issue that are so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus more deliberate investigation.

Defendant Shirley also argues that the agreement is unenforceable because it is too general. The defendant specifically argues that the phrase "restricted business" is undefined in the agreement. However, the term "business" is defined as:

> [A] newsletter (including such related products as door hangers, greeting cards, surveys and advertising inserts) printing, publishing and distribution business targeting apartment

3

> communities, daycare centers, assisted living facilities, mobile home communities, fitness centers and commercial office complexes throughout the United States.

(Noncompetition Agreement at 1). To the extent the phrase is ambiguous when viewed in context of the entire agreement, evidence may be admitted to show the intent of the parties. *Ward v. West Oil Co., Inc.*, 2008 WL 2019123, *5 (S.C. Ct. App. May 12, 2008). This court finds that the plaintiff may in fact demonstrate that the noncompetition agreement is not overly broad. *See Rockford Mfg., Ltd. v. Bennet*, 296 F. Supp.2d 681, 686 (D.S.C. 2003).

The defendant also argues that the "restricted territory" is overly broad. In the *Rockford* case, the Honorable Patrick Michael Duffy, United States District Judge, noted that while the defendants in that case argued that South Carolina "does not permit courts to 'blue pencil' unreasonable provisions of an agreement and enforce reasonable ones[,] [a] survey of South Carolina law suggests otherwise." *Id.* at 687. As the South Carolina Supreme Court in *Eastern Business Forms, Inc. v. Kistler*, 189 S.E.2d 22 (S.C. 1972), stated:

> Some courts have applied the so called 'blue pencil test,' that is, if the excessive restraint is severable in terms, it may be disregarded and the remaining part of the contract enforced; but if the contract is not severable in terms, the entire covenant falls. *Somerset v. Reyner*, 233 S.C. 324, 104 S.E.2d 344. We recognize that some courts apply the rule that if the restrictive covenant as to time or space is unreasonable, even though indivisible in terms, it is nevertheless enforceable for so much of the performance as would be a reasonable restraint. These courts hold that the legality of restraint should not turn on the mere form of the wording but upon the reasonableness of giving effect to the indivisible promise to the extent that would be lawful.
>
> We quote the following from the *Somerset* case which comes from Pollock, Contracts (11th Ed.), page 335:
>
> "A restrictive covenant which contains or may be read as containing distinct undertakings bounded by different limits of space or time, or different in subject matter, may be good as to part and bad as to part. But this does not mean that a single covenant may be artificially split up in order to pick out some part of it that it can be upheld. Severance is permissible only in the

4

> case of a covenant which is in effect a combination of several distinct covenants."
>
> We quote from 17 C.J.S. Contracts § 289a, page 1224, the following:
>
> "The severability of the contract must be determined from its language and subject matter; and where the severable character of the agreement is not determinable from the contract itself, the court, in order to uphold the contract, cannot create a new agreement for the parties, for example, so as to make the restraint a partial restraint within a lesser area than that specified in the covenant or for a lesser period of time."

*Id.* at 23-24.

The "restricted territory" in the instant agreement "means the area within a 100-mile radius of any area in which (A) the Company . . . conducts . . . business or (B) any customer of the Company conducts or conducted business" (Noncompetition Agreement at 2). The defendant argues that part (B) is overly broad as some of the plaintiff's customers conduct business all over the country and even in other countries. Here, as in *Rockford*, "the covenant is mechanically divisible." *Rockford*, 296 F.Supp.2d at 688. Furthermore, the parties have expressly stated their intent that the covenants be severable by including a Severability Clause in the agreement (Noncompetition Agreement at 3). This court finds that the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus more deliberate investigation. Furthermore, the public interest will not be harmed by the requested injunction, as it will do nothing more than maintain the status quo and protect the plaintiff's significant investment.

Based upon the arguments and briefs of the parties and the foregoing law, this court recommends that a temporary restraining order be issued in the manner outlined in this court's previous report and recommendation filed May 13, 2008.


May 27, 2008                                    s/William M. Catoe
Greenville, South Carolina                      United States Magistrate Judge