IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Uhlig LLC, ) | |
| ) | Civil Action No. 6:08-1208-HFF-WMC |
| Plaintiff, ) | |
| ) | **O R D E R** |
| vs. ) | |
| ) | |
| John Adam Shirley, et al., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on several pending motions related to the plaintiff's economist's report (doc. 321, 326, 338). On September 4, 2008, the Honorable Henry F. Floyd, United States District Judge, referred nondispositive motions to this court.

On May 8, 2009, plaintiff Uhlig provided all parties the Expert Report of B. Perry Woodside, Ph.D. (the "Woodside Report"), and documents supporting and underlying the Woodside Report. The Woodside Report estimates the financial damages suffered by the plaintiff at several millions of dollars. Uhlig designated certain pages of the Woodside Report as Confidential, Attorney's Eyes Only ("AEO"), or Limited Attorney's Eyes Only ("LAEO") under the court's Confidentiality Order (doc. 64). On May 11, 2009, counsel for defendants Todd Baldree, L1 Technology, LLC, L1 Land LLC, and L1 Holdings, Inc. (collectively, the "Baldree defendants") and counsel for defendants John Adam Shirley, Prism Content Solutions, LLC, and Eventelope, LLC (collectively, the "Shirley defendants"), requested that their clients be allowed to see all information contained in the Woodside Report. In response, Uhlig reduced the level of protection applicable to much of the information in the Woodside Report by providing the First Redacted Woodside Report on May 14, 2009. After further discussions with defense counsel, Uhlig provided another version of the Woodside Report, the Second Redacted Woodside Report, on May 18, 2009.

On May 21, 2009, the Baldree defendants filed a motion to disclose damages calculation to defendants (doc. 321).[1] The Baldree defendants are sued as alleged "aiders and abettors" in this case. They argue that since they are not competitors of Uhlig, there is no legitimate concern that Mr. Baldree would use the information contained in the calculation for any purpose other than to defend himself and his companies in this litigation. The Baldree defendants contend that fairness requires that Mr. Baldree be permitted free and unfettered communications with his counsel to challenge Uhlig's alleged damages. Mr. Baldree is a businessman who holds an M.B.A. These defendants argue that Mr. Baldree's assistance is also needed in selecting an expert witness to address and counter the report of Uhlig's expert witness. They further argue that Mr. Baldree is entitled to know the methodology selected by Uhlig to reach its number so that he can help counsel evaluate other methodologies that were rejected by Uhlig.

On May 27, 2009, the Shirley defendants filed a motion for the disclosure of damages calculations and production of materials (doc. 326). The Shirley defendants argue that Mr. Shirley's background and experience puts him in a far better position to evaluate the various numbers and propositions in Uhlig's calculations than does his counsel. The Shirley defendants argue that it would be patently unfair to deny Mr. Shirley the right to use his own skills, experience, and education to assist with his defense. They argue that the use of his skills and experience is particularly important here given the costs that the Shirley defendants have already incurred in this litigation, the fact that Eventelope is no longer in business, and that Prism, the source of Mr. Shirley's income, is a relatively small operation. They argue that they are likely to incur far greater expenses if Mr. Shirley is not allowed to use his own education, skills, and experience to assist in his own defense. Moreover, they argue that the designations by Uhlig prevents meaningful communications between counsel and client and

---

[1]Counsel for defendant Jennifer Clark submitted a letter to the court dated June 2, 2009, stating that Clark joined in the motions of the Baldree and Shirley defendants.

2

foreclose Mr. Shirley's ability to use his experience to aid his counsel in selecting the appropriate expert to evaluate and address the assertions made by Uhlig's expert.

The Shirley defendants argue that the documents on which the Woodside Report are based are just as important as the report itself. Specifically, they contend that the AEO designation for CCM revenue information is inconsistent with the treatment the document received in the past when it was sent to Uhlig by Cox Custom Media ("CCM") in January 2008, a month before Uhlig purchased the assets of CCM. CCM and Uhlig were competitors when CCM sent this information to Uhlig, but now Uhlig claims the information is so sensitive that a party subject to the Confidentiality Order cannot even look at it in the offices of its counsel for the benefit of preparing a defense. The Shirley defendants also note that it makes no sense for emails between Uhlig and Mr. Shirley and the attachments thereto to be marked as AEO as, obviously, Mr. Shirley has seen these documents before.

The Shirley defendants ask that the court compel Uhlig to produce the information that was redacted from the documents upon which the Woodside Report was based. As noted above, on May 18, 2009, Uhlig provided the documents expressly referred to in the Woodside Report to the defendants. However, Uhlig redacted some of the information from those documents. The redactions appear in Uhlig's Consolidated Financial Statements and the "Notes to Consolidated Financial Statements." Notably, material was redacted under the section labeled "Intangible Assets." The Shirley defendants argue that his information clearly addresses issues regarding the purchase of assets from CCM and other entities, as well as how the assets from those purchases were accounted for. They argue that in light of the opinion of Uhlig's expert and his reliance on these documents to form his opinion, this information clearly bears on the nature and extent of injuries that Uhlig claims to have suffered.

The Shirley defendants also ask that the court order Uhlig to produce certain other documents that they claim are relevant to the nature and extent of damages that Uhlig

3

claims to have suffered. The documents sought are: (1) an active list of customers that Uhlig claims it purchased from CCM as part of the Asset Purchase Agreement;(2) a current list of customers who were former customers of CCM and up to date revenues generated for each; (3) an active list of customers that Uhlig claims it purchased from certain entities since January of 2007, as of the date of the purchase of those entities; and (4) a current list of Uhlig customers who were former customers of certain entities since January of 2007. They argue that the lists of customers that Uhlig allegedly purchased from CCM and other entities, as well as information showing which of these customers are still customers of Uhlig, is highly relevant to Uhlig's claim for damages. In the damages report, Uhlig's expert applies an "average customer life expectancy" number to calculate the damages that it alleges have been caused by the defendants. This number is based on an attrition rate spanning over the past five or so years. The Shirley defendants argue that they are entitled to look at data related to Uhlig's retention of customers that it allegedly obtained from entities that it purchased, including CCM, to see how that data compares to the "average customer life expectancy" and attrition rate used by Uhlig's expert. They contend this information also "bears on the nature and extent of injuries" that Uhlig claims to have suffered and should be produced.

On June 4, 2009, plaintiff Uhlig filed a motion to confirm its confidential designations of documents, which also served as an opposition to the defendants' motions for disclosure. Uhlig notes that the court's standard Confidentiality Order provides that a party may designate documents as Confidential or AEO after an attorney has reviewed the documents and in good faith "determined that the documents contain information protected from disclosure by statute, sensitive personal information, trade secrets, or confidential research, development, or commercial information" (doc. 64 at ¶ 3). The parties have agreed that by the same standard, documents may also be designated LAEO, which means that a

4

party may view, but not copy or take, such documents while in control of their counsel (m. to confirm, ex. G).

The portions of the Second Redacted Woodside Report that are designated AEO are the seven numeric multiples used in valuing the business segments and customers in the CCM-Uhlig transaction and a margin percentage that are redacted from page 5 and Uhlig's gross margin that is redacted from page 7. Otherwise, the remaining pages of the Woodside Report are designated Confidential or LAEO, so that all parties, counsel, and experts may view them. Also designated AEO are certain attachments to the Woodside Report: Exhibit I entitled "Lost Profits Calculations - based on purchase price multiple"; Exhibit II entitled "Average Customer Life (Years)"; and Exhibit III entitled "Lost Profits Calculations." Uhlig argues that these documents contain trade secrets and highly sensitive proprietary information. Also, certain documents considered by Dr. Woodside in preparing the Report have been designated AEO: Proposed agreement, email discussing compensation terms, and Sales Compensation Worksheet, between John Adam Shirley and Mark A. Uhlig (U06894 - U06902); January 29, 2008, email from Chad Richardson to Mark A. Uhlig, with attached "Recap Grid" and statement of "CCM Working Capital" (U06903 - U06905); Uhlig Purchase Price Worksheet dated January 31, 2008 (U06906-6907); Uhlig Valuation Notes for CCM (U06908 - U06912); January 10, 2008, email from Jordan Whichard to Mark A. Uhlig, with attached documents Uhlig letter_0001.pdf, ccm due diligence response as of 1-10-08.doc, and CCM Key Stats Final.xls (U06913 - U06920); Uhlig Cox CustomMedia Revenue Analysis dated February 15, 2008, and CCM financial statements (U06921 - U06928); Uhlig LLC Independent Auditors' Report and Consolidated Financial Statements dated December 31, 2008 (U06929 - U06946); and Uhlig Customer Life Data FINAL 5-5-09.xls.

Uhlig argues that it has shown good cause for its designations under the Confidentiality Order and that it will be harmed by further release of this specific information to the defendants, who actively are competing against Uhlig. Uhlig further argues that the

defendants are not prejudiced by a lack of access to certain of Uhlig's confidential commercial information because their counsel and experts can freely analyze and critique the Woodside Report and the underlying documents.

Uhlig further argues that the additional documents requested by the Shirley defendants[2] go well beyond Dr. Woodside's report and analysis. Uhlig further notes that Dr. Woodside did not have, nor did he request, that information to conduct his analysis and that "it is difficult to conceive of any legitimate purpose for Shirley's demand of customer names and revenue figures." This court agrees.

This court has considered the arguments of the parties and finds that the defendants are entitled to view the complete Woodside Report, the documents attached to the report, and the documents on which that report is based. Accordingly, the portions of the report and the supporting documents that are currently designated AEO should be changed to an LAEO designation, which means that a party may view, but not copy or take, such documents while in control of their counsel. However, the Shirley defendants' request for additional documents that were not used by Dr. Woodside in his report is denied.

Wherefore, based upon the foregoing, the Baldree defendants' motion to disclose damages calculation to defendants (doc. 321) is granted; the Shirley defendants' motion for disclosure of damages calculations and production of materials (doc. 326) is granted in part and denied in part; and plaintiff Uhlig's motion to confirm confidentiality designations of damages documents (doc. 338) is denied.

IT IS SO ORDERED.

July 28, 2009  
Greenville, South Carolina

s/William M. Catoe  
United States Magistrate Judge

---

[2]The additional documents sought by the Shirley defendants are: (1) an active list of customers that Uhlig claims it purchased from CCM as part of the Asset Purchase Agreement; (2) a current list of customers who were former customers of CCM and up to date revenues generated for each; (3) an active list of customers that Uhlig claims it purchased from certain entities since January of 2007, as of the date of the purchase of those entities; and (4) a current list of Uhlig customers who were former customers of certain entities since January of 2007.

6