IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| UHLIG LLC, et. al. | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 6:08-cv-01208-JMC |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| JOHN ADAM SHIRLEY, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on Intervener/Plaintiff Cox CustomMedia, Inc.'s ("CCM") motion for summary judgment on standing and on Defendant John Adam Shirley's ("Shirley") counter-claims against CCM. [Doc. 544-1].

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Uhlig LLC ("Uhlig") is in the business of designing and creating newsletters for residents of multi-unit residential and apartment complexes and franchise businesses throughout the United States. [Doc. 544-3, at 2]. Uhlig creates as original works the design, templates, written content, and other collateral materials for its clients. [Doc. 544-3, at 2]. This client-specific material and information constitutes the intellectual property and confidential information and trade secrets which Uhlig has protected by copyright. [Doc. 544-3, at 2-4]. Uhlig is the leader in creating newsletters for the multi-family apartment industry and for senior residential communities. Id.

On February 29, 2008, CCM, and CCM's corporate parent, Cox Newspapers, Inc., entered into an Agreement for the Purchase and Sale of Assets (the "APA"), whereby Uhlig acquired from CCM certain assets (personal, tangible and intangible), personal and business property, including all intellectual property (including, but not limited to CCM's proprietary and confidential information, trade secrets, copyrights, copyrightable material, and trademarks), and all causes of action and claims

1

against third parties. [Doc. 544-3, at 3]. Pursuant to this APA, Uhlig acquired such information as the names, addresses, and contact information of each of its customers, pricing calculations, custom content and confidential information concerning CCM's clients, its original works of design and looks specific to its customers ("CustomMedia templates"), and the library and database of copyright and copyrightable original works of written content for newsletters created by CCM. [Doc. 544-3, at 3].

Prior to Uhlig and CCM entering into the Agreement, Shirley was employed by CCM as its Vice President and its highest paid full time employee. [Doc. 544-3, at 3]. CCM ceased all active operations but, pursuant to the Leased Employee Agreement ("LEA") entered into by these parties on the same date, CCM agreed to retain all employees, including Defendant Shirley, for a period of up to four months to permit the orderly transition of its accounts to Uhlig. [Doc. 544-3, at 3]. During this transition period, Shirley continued acting as the Vice President, with access to confidential information and trade secrets now belonging to Uhlig, including trade secret information regarding marketing, order negotiations, pricing, developing sales opportunities, and providing service to customers. [Doc. 544-3, at 3-4]. These parties attempted to negotiate with Shirley to serve as an independent contractor consultant for Uhlig in its newly-acquired business. [Doc. 544-3, at 5]. Thereafter, Shirley resigned effective March 10, 2008. [Doc. 544-3, at 6].

On April 3, 2008, Uhlig filed suit asserting causes of action for copyright infringement, misappropriation of trade secrets, conversion, passing off and trademark infringement, breach of fiduciary duty, misappropriation of corporate opportunity, tortious interference of contract, civil conspiracy, violations of the Computer Fraud and Abuse Act, 18 U.S.C § 1030(g), and the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a). On April 7, 2008, Uhlig filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking to enjoin Shirley, and others acting in concert with Defendants, from any unlawful use of Uhlig's trade secrets that Defendants allegedly misappropriated in violation of the South Carolina Trade Secrets Act. [Doc. 5].

CCM sought to intervene in this action for the limited purpose of ensuring that Uhlig has

standing to seek effective relief for the alleged misconduct by Defendants regarding the Non-Competition and Non-Solicitation Agreement (the "Agreement") between CCM and Shirley. By order dated October 22, 2008 [Doc. 166], CCM has been allowed to intervene for the limited purpose of ensuring that Uhlig has standing to obtain the relief sought.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) states:

> A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the party's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.

Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Furthermore, Rule 56(e) provides in pertinent part:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for the purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce the existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**I.    Standing**

"A plaintiff must have standing to institute an action." *Sloan v. Greenville County*, 356 S.C. 531, 547, 590 S.E.2d 338, 347 (Ct. App. 2003) (citing *Joytime Distribs. & Amusement Co., Inc. v. State*, 338 S.C. 634, 639, 528 S.E.2d 647, 649 (1999)). "To have standing, one must have a personal stake in the subject matter of the lawsuit." *Id.* (citing *Sea Pines Ass'n for the Prot. Of Wildlife, Inc. v. South Carolina Dep't of Natural Res.*, 345 S.C. 594, 600, 550 S.E.2d 287, 291 (2001)). Furthermore, "[t]o have standing . . . one must be a real party in interest. A real party in interest is one who has a real, material, or substantial interest in the subject matter of the action, as opposed to one who has only a nominal or technical interest in the action. *Id.* (citing *Charleston*

*County Sch. Dist. v. Charleston County Election Comm'n*, 336 S.C. 174, 181, 519 S.E.2d 567, 571 (1999)).

### A. Uhlig's Standing to Enforce the Non-Compete Agreement

CCM argues that Uhlig has standing to enforce the Noncompetition Agreement. The general rule is that non-compete agreements are assignable in the context of the sale of a business. *See e.g.*, *Equifax Servs., Inc., v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990) ("[T]he right to enforce a covenant not to compete is generally assignable in connection with the sale of a business[.]") (citing Restatement (Second) of Contracts § 317 cmt. d illustration 6 (1981)); *Managed Health Care Assocs., Inc., v. Kethan*, 209 F.3d 923, 930 (6th Cir. 2000) (noting that following "the majority rule from other states that have addressed the issue," the Kentucky Supreme Court would hold that non-competition agreements are assignable under Kentucky law); *Reynolds and Reynolds Co. v. Tart*, 955 F. Supp. 547, 556-57 (W.D.N.C. 1997) ("As a general matter, a covenant not to compete with a business is assignable.") (internal quotation marks omitted) (citing supporting cases from multiple jurisdictions).

Section 1.3(g) of the APA states that "all other contracts, agreements, . . . owned or acquired by [CCM] at or before the closing date and relating to [CCM's] business" are a part of the assets purchased. [Doc. 568-1, at 6-7, § 1.3(g)]. Furthermore, Shirley's employment contract states that his non-compete agreement "shall inure to the benefit of and be enforceable by [CCM], its successors, assigns and successors-in-interest . . . ." [Doc. 544-4, at 4, § 8]. Therefore, this court finds that CCM assigned the Noncompetition Agreement to Uhlig and that Uhlig has standing to enforce it. CCM's motion for summary judgment on standing [Doc. 544-1] with respect to this issue is hereby granted.

### B. Uhlig's Standing to Enforce All Other Claims

CCM argues that Uhlig has standing to assert causes of action for breach of duty of loyalty, breach of fiduciary duty, misappropriation of corporate opportunity, and breach of contract. The evidence in the record clearly demonstrates that CCM assigned or otherwise transferred to Uhlig each of the claims asserted in the Third Amended Complaint. The APA between CCM and Uhlig not only

effected the transfer to Uhlig of all of CCM's intellectual property assets including trade secrets, copyrights and trademarks, but also assigned to Uhlig all of CCM's causes of action and claims against third parties. Numerous courts have held that causes of action are assignable. *See e.g.*, *Rosen v. Mega Blocks, Inc.*, No. 06 Civ. 3474 (LTS) (GWG), 2009 WL 929474, at * 11 (S.D.N.Y. Apr. 7, 2009 ("Under New York law, causes of action are freely assignable, and there is thus no reason a claim of breach of fiduciary duty may not also be assigned") (internal citation omitted); *TMJ Hawaii, Inc. v. Nippon Trust Bank*, 153 P.3d 444, 455-56, 113 Hawai'i 373, 384-85 (Haw. 2007) (breach of fiduciary duty claim held to be assignable where injury at issue was financial in nature, and therefore non-personal); *Holiday Props. Acquisition Corp. v. Lowrie*, Nos. 21055, 21133, 2003 WL 1040162, at *3-4 (Ohio Ct. App. Mar. 12, 2003) (breach of fiduciary duty claim relating to injury to property was assignable); *Starview Ventures v. Acadia Ins. Co.*, No. CV065003463S, 2009 WL 5511543, at *9-10 (Conn. Super. Ct. Dec. 16, 2009) (holding breach of fiduciary duty claim to be assignable).

However, the record establishes that Shirley was Uhlig's leased employee. [Doc. 544-3, at 4, ¶ 8]; [Doc. 544-1, at 3-4]. Nevertheless, Shirley, as a leased employee, still owes a duty of loyalty and a fiduciary duty to the entity for which he was actively working. And Uhlig has standing to assert these claims against Shirley because it has "a . . . stake in the subject matter of the lawsuit" because Shirley's conduct, as an employee or as a leased employee, affects it. *Sloan*, 356 S.C. at 547, 590 S.E.2d at 347 (citing *Sea Pines Ass'n for the Prot. of Wildlife, Inc. v. South Carolina Dep't of Natural Res.*, 345 S.C. 15, 21, 532 S.E.2d 287, 291 (2001)). Moreover, Shirley filed no response and made no arguments which countered CCM's arguments supporting Uhlig's standing to assert its claims for breach of the duty of loyalty, breach of fiduciary duty, misappropriation of corporate opportunity, and breach of contract. Accordingly, CCM's motion for summary judgment with respect to Uhlig's standing to assert these causes of action is granted.

## II.     Shirley's Counter-Claims

### A.     Abuse of Process

Under South Carolina law, the two essential elements of an abuse of process claim that a plaintiff must establish are "1) an ulterior purpose, and 2) a willful act in the use of the process not proper in the conduct of the proceeding." *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 351 S.C. 65, 71, 567 S.E.2d 251, 253 (Ct. App. 2002). To sustain a claim for abuse of process, the plaintiff must establish facts sufficient to show an ulterior purpose by the defendant. *Id.* "An ulterior purpose exists if the process is used to gain an objective not legitimate in the use of the process." *Id.* Thus, no liability exists "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Hainer v. Am. Med. Int'l, Inc.*, 328 S.C. 128, 136, 492 S.E.2d 103, 107 (1997). Furthermore, according to the court in *Food Lion*,

> "One who uses a legal process, whether criminal or civil, against another *primarily* to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." As noted in the Restatement comment, "the significance of ['primarily'] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." Accordingly, liability exists not because a party merely seeks to gain a collateral advantage by using some legal process, but because the collateral objective was its sole or paramount reason for acting.

*Food Lion,* Inc., 351 S.C. at 75, 567 S.E.2d at 255-56 (emphasis supplied) (internal citations omitted).[1]

Here, with respect to CCM's supposed ulterior motive, Shirley has alleged that CCM intervened in this action "solely for purposes other than the lawful disposition of a legitimate dispute," that CCM intervened and asserted claims against Shirley "solely for the ulterior purpose of receiving a release from Uhlig of any and all claims and causes of action based on the facts giving rise to this

---

[1] *See also Davis v. Epting*, 317 S.C. 315, 319-20, 454 S.E.2d 325, 328 (Ct. App. 1994) (finding no ulterior purpose where there was no evidence that process was used to gain anything other than a right to access disputed property); *Rycroft v. Gaddy*, 281 S.C. 119, 125, 314 S.E.2d 39, 44 (Ct. App. 1984) (holding no ulterior purpose was shown where defendants' use of subpoena to obtain bank records was for the "entirely legitimate purpose" of gathering evidence).

7

lawsuit," and that CCM similarly intervened and asserted claims against Prism "solely to be released from claims Uhlig might have against CCM." [Doc. 461, at 43-47]. The only evidence that the court discerns Shirley has introduced on this issue is the deposition of Brian Cooper, Corporate Designee for CCM, in which he states "[m]y understanding is that the Uhlig Company is the company that's damaged. And the reason why we're here is that there was a question as to what our standing was in the case, and that's why we're part of this lawsuit." [Doc. 558-21, at 6 (157:16-20)]. However, even when viewed in a light most favorable to Shirley as the non-movant, the evidence he presents highlights CCM's legitimate purpose for joining the suit - to resolve the question concerning Uhlig's standing to assert rights or claims in this lawsuit. The presence of its legitimate motive for intervening in the lawsuit renders summary judgment in favor of CCM proper. Given that Shirley has failed to establish the first element of a claim for abuse of process, the court finds it unnecessary to discuss the second element. Accordingly, CCM's motion for summary judgment with respect to this claim is granted.

      **B.**      **Lanham Act Claim**

Shirley alleges that "CCM and/or Uhlig" violated Section 43(a) of the Lanham Act by using his "name, picture, identity and likeness without his permission in a manner that was likely to cause confusion, cause mistake or deceive the public as to the affiliation, connection, or association of Shirley with said products and services…." [Doc. 461, at 40, ¶ 269]. Shirley contends that "CCM and/or Uhlig" continued to "use his name and picture" on CCM's website and "in promotional and advertising material pertaining to CCM." [Doc. 461, at 34, ¶ 232].

Section 43(a) of the Lanham Act provides that:

> [a]ny person who, on or in connection with any goods or services … uses in commerce any word, term [or] name … or any false designation of origin … which is likely to cause confusion, or cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by

> another person … shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). "In order to sustain a Lanham Act claim under § 43(a)(1)(A) for false association or false endorsement, [the plaintiff] must prove: (1) [the] defendant . . . made false representations about [the plaintiff's] product or service's endorsement or association; (2) the misrepresented product or service travels in interstate commerce; (3) the misrepresentations are likely to deceive a substantial segment of the intended audience, both present and potential customers of [the plaintiff]; and (4) the misrepresentations are material, in that they are likely to cause injury." *McMahon v. City of Chicago*, No. 98-C-8026, 1999 WL 342712, at *2 (N.D. Ill. May 17, 1999) (citing *B. Sandfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999)). Moreover, a plaintiff claiming false association or endorsement must prove that he or she is a "celebrity." *See, e.g., ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 925-26 (6th Cir. 2003); *Condit v. Star Editorial, Inc.*, 259 F. Supp. 2d 1046, 1051 (E. D. Cal. 2003).

This last requirement is where Shirley's claim falls short, because Shirley, a newsletter salesman, has not shown that he is a celebrity, and because he has admitted that he is not a celebrity. Only celebrities have standing to assert a false association or endorsement claim under the Lanham Act. *See, e.g.*, 1 FEDERAL UNFAIR COMPETITION: LANHAM ACT 43(a) ("However, section 43(a) does not protect a noncelebrity…."); MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (4th ed.) § 28:15 ("False endorsement occurs when a *celebrity's* identity is connected with a product or service in such a way that consumers are likely to be misled about the *celebrity's* sponsorship or approval of the product or service.") (emphasis added) (citing *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d at 925-26); *Condit*, 259 F. Supp. 2d at 1051 ("Thus, Plaintiff must demonstrate that she was a 'celebrity' when Defendants used her persona, name and likeness; otherwise, her identity does not constitute an economic interest protectable under the Lanham Act.") (citing *Pesina v. Midway Mfg. Co.*, 948 F.

Supp. 40, 43 (N.D. Ill. 1996)). Here, Shirley has not established that he is a celebrity. In fact, Shirley testified that he is not a celebrity. *See* [Doc. 544-6, at 16] (Q. Are you a celebrity? A. Some people's eyes maybe. *No; only in my own*.") (emphasis added). Instead, Shirley has merely asserted that he is a "well regarded sales representative" with an "excellent reputation" and "significant name recognition." [Doc. 544-6, at 16]. Accordingly, the court grants summary judgment in favor of CCM with respect to this claim.

### C. Invasion of Privacy

Shirley also claims that CCM violated his right of publicity and misappropriated his name and likeness by using his name, picture, identity and likeness without his permission after his departure from CCM. The South Carolina Supreme Court has stated that "wrongful appropriation of personality" and "infringement on the right of publicity" are the same claim under the rubric of "invasion of privacy". *See Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.,* 385 S.C. 452, 458-49, 684 S.E.2d 756, 759-60 (2009). In *Gignilliat,* the Court reviewed how other jurisdictions have treated the misappropriation of publicity claim and South Carolina's law on "invasion of privacy". The court noted: "[i]n South Carolina, there are three separate and distinct causes of action for invasion of privacy: 1) wrongful appropriation of personality; 2) wrongful publicizing of private affairs; and 3) wrongful intrusion into private affairs . . . . The gist of the [first] action is the violation of the Plaintiff's exclusive right at common law to publicize and profit from his name, likeness and other aspects of his personal identity." *Id*. (citing *Sloan v. South Carolina Dept. of Public Safety,* 355 S.C. 321, 326, 586 S.E.2d 108, 110 (S.C. 2003) (internal citations omitted). The *Gignilliat* Court held that "[e]ncompassed in these three recognized torts is the infringement on the right of publicity; it is denominated wrongful appropriation of personality. *Id.* at 459. "Wrongful appropriation of personality involves the intentional, unconsented use of the plaintiff's name, likeness, or identity by

10

the defendant for his own benefit." *Sloan*, 355 S.C. at 326, 586 S.E.2d at 110 (2003); *Gignilliat*, 684 S.E.2d at 762.

Just as under the Lanham Act, a plaintiff must establish celebrity status in order to sustain a wrongful appropriation of personality claim. *See Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1220-21 (10th Cir. 2004) (beer salesman could not recover for right of publicity claim because there was no evidence that he was a "celebrity"); *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 624 (6th Cir. 2000) ("The right of publicity is designed to *reserve to a celebrity*, the personal right to exploit the commercial value of his own identity.") (emphasis added); *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 835 (6th Cir. 1983) ("[t]he famous have an exclusive legal right during life to control and profit from the commercial use of their name and personality.") (citing *Memphis Development Foundation v. Factors Etc., Inc.*, 616 F.2d 956 (6th Cir. 1980)). As previously discussed, with respect to the Lanham Act claim, Shirley has explicitly admitted that he is not a celebrity, [Doc. 544-6, at 16], and has instead alleged merely that he is a "well-regarded" salesman, which, as a matter of law, does not rise to the level of celebrity status required to support an appropriation of personality claim. Moreover, Shirley consented to the use of his name, photograph and likeness on company materials before he quit his position at CCM. *See* [Doc. 544-6, at 9-10] ("… I did not have a problem with my photo being on the CCM site prior to my departure.").[2] Indeed, Shirley can provide no evidence that the use of his name or likeness appeared on CCM materials in some way that was not merely incidental or informational. *See* [Doc. 544-6, at 13] (admitting that he has no evidence the inclusion of his name or photograph on the company's website after the

---

[2]*See Brasel v. Hair Co.*, 976 So.2d 390, 391 (Miss. Ct. App. 2008) (granting hair salon's motion for summary judgment on patron's appropriation of likeness claim because patron initially consented to being photographed by salon owner, and patron did not place any limitations on salon's use of his photograph for advertising or otherwise)

11

termination of his employment was intentional and that he is merely "assuming" that the decision was intentional).[3]  Accordingly, the court grants summary judgment in favor of CCM on this claim.

**D.     Violation of the South Carolina UTPA**

Shirley claims that CCM violated the South Carolina Unfair Trade Practices Act ("UTPA"), [Doc. 205, at 43, ¶¶ 279-283], by using his name, picture, identity and likeness without his permission after his departure from CCM.  The UTPA creates a private right of action in favor of "any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 . . . ." S.C. Code Ann. § 39-5-140(a). Section 39-5-20, in turn, generally provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." S.C. Code Ann. § 39-5-20(a).  The UTPA is limited, however, in the sense that it is applicable only where the alleged deceptive acts affect the public interest. *See York v. Conway Ford, Inc.*, 325 S.C. 170, 173, 480 S.E.2d 726, 728 (1997).

"To be actionable under the UTPA, the unfair or deceptive act or practice must have an impact upon the public interest." *York*, 325 S.C. at 173, 480 S.E.2d at 728. This means that the unfair or deceptive acts or practices must have the "potential for repetition." *Id.*  Furthermore, the conduct at issue must affect more than just the parties to the litigation. *See Florence Paper Co. v. Orphan*, 298 S.C. 210, 379 S.E.2d 289 (1989). Potential for repetition can be demonstrated by alleging specific facts showing that: (1) the same kind of actions occurred in the past, or (2) the company's procedures create

---

[3]*See Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 592 (D.C. 1985) (affirming jnov on appropriation of likeness claim because "incidental use of name or likeness or publication for a purpose other than taking advantage of a person's reputation or the value associated with his name will not result in actionable appropriation"); *Pearce v. E.F. Hutton Group, Inc.*, 664 F. Supp. 1490, 1500 (D.D.C. 1987) (dismissing plaintiff's misappropriation of name claim because plaintiff "presented no evidence that defendants' use of his name was for anything other than information purposes"); *see also Ferdick v. ABC, Inc.*, 1:08-CV-03001, 2008 WL 4145858, at *5 (D. Or. Aug. 8, 2008) (dismissing plaintiff's right of publicity claim because his allegations were "conclusory," and plaintiff did "not identify what benefit [the] defendant … derived from the alleged misappropriation").

a potential for repetition. *See Daisy Outdoor Adver. Co. v. Abbott*, 322 S.C. 489, 496, 473 S.E.2d 47, 51 (1996).

Shirley's counterclaim fails both of the essential elements required to sustain a UTPA claim in that the alleged conduct supporting his claim has no material impact beyond the parties involved in this litigation and there is no potential for repetition of the alleged conduct. First, the alleged conduct underlying the heart of Shirley's counterclaims relates to a private dispute between two commercial parties regarding intellectual property rights. A private dispute between two competitors does not impact the public interest under the UTPA. *See Noack Enters. v. Country Corner Interiors of Hilton Head Island, Inc.*, 290 S.C. 475, 479, 351 S.E.2d 347, 349-50 (Ct. App. 1986) ("[An] unfair or deceptive act or practice that affects only the parties to a trade or commercial transaction is beyond the act's embrace."); *Florence Paper Co. v. Orphan*, 298 S.C. 210, 379 S.E.2d 289 (1989); *Omni Outdoor Adver., Inc. v. Columbia Outdoor Adver., Inc.*, 974 F.2d 502 (4th Cir. 1992); *Orangeburg Pecan Co. v. Farmers Inv. Co.*, 869 F. Supp. 359 (D.S.C. 1994). In *Florence Paper Co.*, the allegations and claims were very similar to those at issue here: Florence Paper Company brought a misappropriation of trade secret claim and a UTPA claim, among others, against its former employee, Orphan. Upholding summary judgment for Orphan, the court held that the public interest requirement was not satisfied because the alleged unfair competition involved "only two direct competitors." *Florence Paper Co.*, 298 S.C. at 213, 379 S.E.2d at 291.

Furthermore disputes arising between employers and employees are private matters that fall outside the scope of the UTPA. *See Miller v. Fairfield Communities, Inc.*, 382 S.E.2d 16, 20, 299 S.C. 23, 28 (Ct. App. 1989) (sustaining summary judgment dismissal of UTPA claim because complaint regarding "employer-employee relations matter … is not covered by the Unfair Trade Practices Act"), *cert. dismissed*, 302 S.C. 518, 397 S.E.2d 377 (1990); *Davenport v. Island Ford, Lincoln, Mercury, Inc.*, 320 S.C. 424, 428, 465 S.E.2d 737, 740 (1995) ("The UTPA does not apply to acts that take place in an employer-employee relationship."); *Ramsey v. Vanguard Servs., Inc.*, C/A No. 8:07-CV-00265-

GRA, 2007 WL 904526, at *3 (D.S.C. Mar. 22, 2007) (dismissing UTPA claim because "South Carolina law clearly establishes that issues involving an employer/employee relationship fall outside the scope of the Unfair Trade Practices Act").

Again, Shirley contends that "CCM and/or Uhlig" continued to "use his name and picture" on CCM's website and "in promotional and advertising material pertaining to CCM." [Doc. 461, at 34, ¶ 232]. However, the undisputed evidence regarding that issue is insufficient as a matter of law to sustain a UTPA claim because Shirley can offer no evidence that the inclusion of his name and picture on the company's website following the termination of his employment was unfair and deceptive.

First, as set forth above, Shirley can provide no evidence that the continued use of his name or likeness appeared on CCM materials was intentional and not merely incidental. [Doc. 344-6, at 13].

Second, Shirley has offered no evidence that such information was likely to mislead the public. Indeed, Shirley testified repeatedly that he has no evidence that any person whatsoever was ever confused by his name or photograph remaining on CCM's website and that he does not know of a single customer or potential customer who even viewed that information. [Doc. 544-6, at 7-8]; *see also* [Doc. 544-6, at 8] (admitting that, other than employees of his new company, Prism, "I don't know of anyone else in the public domain that saw it"); [Doc. 544-6, at 18] (Q. So you don't know of anyone being misled or confused? A. I can't give you a single example of that at this time."). Moreover, Shirley has admitted that he is not a celebrity, [Doc. 544-6, at 16], which further indicates that alleged conduct upon which Shirley relies to support his UTPA claim had no likelihood of confusing the public.

Third, the alleged conduct cannot be considered unfair or deceptive because Shirley consented to the use of his name, photograph and likeness on company materials before he quit his position at CCM, and Shirley admits that he never revoked that consent nor requested that CCM move this name or picture from the company website. [Doc. 544-6, at 9-10]; [Doc. 544-6, at 12-13].

Fourth, Shirley's claim regarding the alleged continued use of his name or likeness cannot rise to the level of a UTPA claim for the separate and independent reason that the alleged conduct has no potential for repetition. *See Noack Enters*, 290 S.C. at 480, 351 S.E.2d at 351 (dismissing plaintiff's complaint because there were "no allegations in the complaint that suggest[ed] that any of the unfair acts or deceptive practices allegedly employed by the respondents in their sale of the business might possibly recur"). Indeed, there can obviously be no repetition of any unfair or deceptive acts by CCM because CCM is no longer in business. Therefore, CCM is entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, this court concludes that Cox CustomMedia, Inc.'s motion for summary judgment [Doc. 544] is **GRANTED** with respect to the following claims by Shirley: breach of the duty of loyalty, breach of fiduciary duty; misappropriation of corporate opportunity; and breach of contract. Cox CustomMedia Inc.'s motion for summary judgment is also **GRANTED** with respect to the following claims: Uhlig's standing to sue under the Noncompetition Agreement; Shirley's counterclaims under the Lanham Act, Abuse of Process, Invasion of Privacy and the South Carolina Unfair Trade Practices Act. Cox CustomMedia is hereby dismissed with prejudice.

**IT IS SO ORDERED.**

s/ J. Michelle Childs
United States District Judge

March 25, 2011
Greenville, South Carolina