IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

|  |  |  |
|---|---|---|
| UHLIG LLC, et. al. | ) | C.A. No: 6:08-CV-01208-JMC |
|  | ) |  |
| Plaintiffs, | ) | **MEMORANDUM IN SUPPORT OF** |
|  | ) | **MOTION FOR PARTIAL** |
| vs. | ) | **RECONSIDERATION OF ORDER** |
|  | ) | **GRANTING SUMMARY JUDGMENT** |
| JOHN ADAM SHIRLEY, et. al., | ) | **TO COX CUSTOMMEDIA, INC.** |
|  | ) |  |
| Defendants. | ) |  |
| _____ | ) |  |

Pursuant to Federal Rule of Civil Procedure 59(e) and/or the Court's inherent power to reconsider interlocutory orders, see <u>Jensen v. Conrad</u>, 270 F.Supp. 91 (D.S.C. 1983), Defendants have filed a motion for partial reconsideration of the Court's Order granting Cox CustomMedia, Inc.'s ("CCM") Motion for Summary Judgment (Doc. 685) (hereinafter "the CCM Order"). Defendants are seeking reconsideration of 1) the finding that CCM assigned the Noncompetition Agreement to Uhlig and that Uhlig has standing to enforce it, 2) the finding that CCM's claims for breach of duty of loyalty, breach of fiduciary duty, misappropriation of corporate opportunity, and aiding and abetting a breach of fiduciary duty (collectively, the "Fiduciary Duty claims") are assignable to Uhlig, and 3) the grant of summary judgment as to Defendant Shirley's claim for abuse of process against CCM.

As set forth more specifically below:

- Genuine issues of material fact exist as to whether CCM assigned to Uhlig the Noncompetition Agreement between CCM and Shirley.

- CCM could not assign its Fiduciary Duty claims to Uhlig since South Carolina law prohibits the assignment of contractual rights that involve a relationship of personal trust and confidence.

- CCM could not assign its Fiduciary Duty claims to Uhlig since such claims "fit within the ambit" of deceptive conduct.

- A reasonable juror could find, in light of the Joint Interest Agreement between CCM and Uhlig, that CCM intervened and brought claims against Shirley solely for the ulterior purpose of gaining a release from Uhlig.

Defendants respectfully submit that summary judgment to CCM is inappropriate on these issues.

I.     **Assignment of the Noncompetition Agreement**

All of the parties in this action moved for summary judgment on the issue of whether Uhlig has standing to enforce the Noncompetition and Nonsolicitation Agreement between CCM and Shirley (hereinafter "the Agreement"). In the CCM Order, the Court found "that CCM assigned the Noncompetition Agreement to Uhlig and that Uhlig has standing to enforce it." [CCM Order p. 5]. However, in its Order on Defendants' motion for summary judgment, the Court held that there is a genuine dispute as to material facts concerning whether the Agreement was assigned under the APA. [Doc. 687 p. 5].

In the CCM Order, the Court relied on section 1.3(g) of the Asset Purchase Agreement between CCM and Uhlig (the "APA"), which states that "all other contracts agreements . . . owned or acquired by CCM at or before the closing date and relating to CCM's business" are a part of the assets purchased. [Id.]. However, in its Order on Defendants' motion for summary judgment, this Court held that section 1.3(g) raises a genuine issue of fact as to Uhlig's standing *in light of section 2.10 of the APA*. [Doc. 687 p. 6]. Section 2.10 is entitled "Contracts" and provides that exhibit 2.10 to the APA contains a schedule and copies of "all Contracts" to which CCM is a party and which constitute part of the purchased assets. [Doc. 687 p. 5; Doc. 545-9 §2.10]. The term "Contracts" is defined to include employment contracts. [Doc. 545-9 §2.10; see also Doc. 687 p. 5]. However, exhibit 2.10 to the APA says "None." [Doc. 545-9, exh. 2.10;

2

Doc. 687 p. 5]. After addressing these sections, as well as 1.3(g), the Court found that there is a genuine dispute as to material facts concerning whether the Agreement was assigned under the APA.[1]

The Court did not address section 2.10 of the APA in the CCM Order. However, at the very least, section 2.10 creates a genuine issue of material fact as to whether or not the Agreement was assigned to Uhlig under the APA. Section 2.10 contains the most specific reference to employment agreements. See Richland-Lexington Airport Dist. v. Am. Airlines, Inc., 306 F.Supp.2d 548, 564 (D.S.C. 2002) ("Any inconsistency between a general clause and a specific clause must be resolved in favor of the specific."); see also Fonda Group, 897 F.Supp. at 232 ("the most specific reference to 'employment . . . agreements' in the APA is Section 3.08(b) and thus if the parties intended to assign [the non-compete contracts at issue], the contracts would have been listed."). Moreover, section 1.4(c) specifically excludes CCM employee files and records from the excluded assets, and, at the very least, there is a factual issue as to whether the Agreement constitutes an employee record and/or was intended to be kept in an employee file. [See Doc. 545-9 §1.4(c); Doc. 545-18].

Most significantly, the Court addressed section 2.10 in its Order on Defendants' Motion for Summary Judgment and specifically found that there is a genuine issue as to material facts concerning whether the APA assigned the Agreement. For all of these reasons, Defendants

---

[1] This reasoning is consistent with Fonda Group v. Erving Indus., 897 F. Supp. 230, 232 (E.D. Pa. 1995), which dealt with a similar issue and found that "the Asset Purchase Agreement ('APA') is ambiguous as to whether the employment contracts at issue were assigned." The Fonda Group Court explained "[t]here is a reasonable argument that the most specific reference to 'employment . . . agreements' in the APA is Section 3.08(b) and thus if the parties intended to assign Schafer and Cerminara's contracts, the contracts would have been listed, but the relevant Schedule 3.08(b) does not include the two specific restrictive covenants at issue or any others." Id. "On the other hand, there is also a reasonable argument that the two restrictive covenants were assigned by the general language in Schedule 3.08 – 'Uniform Employment Agreement with Scott Paper Company.'"

respectfully submit that summary judgment as to whether the Agreement was assigned under the APA is inappropriate.[2]

## II.     Breach of Fiduciary Duty Claims

The Fiduciary Duty claims in the Third Amended Complaint allege, among other things, that Shirley breached fiduciary duties that he owed *to CCM*. [Doc. 501 ¶¶99-104, ¶¶111-20; ¶128; ¶¶208-17]. CCM, which intervened in this action, asserted that Uhlig has standing to bring claims that Shirley breached fiduciary duties to CCM. The Court found that the Fiduciary Duty claims were assignable to Uhlig. However, the Court did not address South Carolina law holding that rights arising out of a contract cannot be transferred if they involve a relationship of personal credit and confidence. The Court also did not address Defendants' argument that these claims are not assignable since they fit within the ambit of deceptive conduct.

### A.     The Fiduciary Duty Claims Involve a Relationship of Personal Confidence

In finding that the Fiduciary Duty claims were assignable from CCM to Uhlig, the Court relied on cases from other jurisdictions holding that such causes of action are assignable. [CCM Order p. 6]. However, under South Carolina law, rights arising out of a contract cannot be transferred "if they involve a relationship of personal credit and confidence." Johnson v. Bank of Am., N.A., 2010 U.S. Dist. Lexis 38080 *11 (D.S.C. April 16, 2010) (citing Green v. Camlin, 229 S.C. 129, 92 S.E.2d 125 (S.C. 1956)).[3] Here, CCM's rights to Shirley's loyalty and his fiduciary obligations, as well as its rights to bring an action based on these duties, arise out of its

---

[2] Defendants also note that CCM's involvement in this lawsuit to assert Uhlig's standing to enforce the Agreement serves no purpose. Uhlig has an identical interest to that of CCM and can adequately protect the interest of its own standing to enforce the Agreement. Moreover, CCM certainly has no right of its own to enforce the Agreement since it ceased doing business on February 28, 2008. [See Def. Memo. Supp. Mot. Summ. J. pp. 12-13 (Doc. 545-1)].

[3] In addition, South Carolina's sister state, North Carolina, has held that a claim for breach of fiduciary duty cannot be assigned since it concerns a special relationship of trust and confidence. Horton v. New South Ins. Co., 468 S.E.2d 856, 858 (N.C. App. 1996).

employment contract with Shirley. By definition, CCM's rights out of this employment contract involved a relationship of personal credit and confidence. See, e.g., Minyard Enters., Inc. v. Southeastern Chem. & Solvent Co., 184 F.3d 373, 381 n. 10 (4th Cir. 1999) ("Under South Carolina common law, agency is a fiduciary relationship . . ."); RegionsBank v. Schmauch, 582 S.E.2d 432, 444 (S.C. App. 2003) ("A fiduciary relationship is founded on the trust and confidence reposed by one person in the integrity and fidelity of another."). Consequently, CCM cannot transfer these rights to Uhlig.

For these reasons, Defendants respectfully submit that Uhlig does not have standing to assert claims for breach of fiduciary duties that Shirley owed to CCM and summary judgment to CCM is inappropriate on this issue.

**B.     The Fiduciary Duty claims fit within the ambit of deceptive conduct**

The law is clear that claims which "fit within the ambit of fraudulent or deceptive conduct" are not assignable, regardless of how such claims are labeled. Brailsford v. Brailsford, 380 S.C. 443, 450, 669 S.E.2d 342, 345 (Ct. App. 2008); Schneider v. Allstate Ins. Co., 487 F. Supp. 239, 241 (D.S.C. 1980). In South Carolina, claims are only assignable if they would survive to the assignor's personal representative in the event of the assignor's death, Schneider, 487 F. Supp. at 241 (D.S.C. 1980) (citing Doremus v. Atlantic Coast Railroad Company, 242 S.C. 123, 130 S.E.2d 370 (1963)), and any claims which fit within the ambit of deceptive conduct do not survive a plaintiff's death. Brailsford, 380 S.C. at 450, 669 S.E.2d at 345.

In Brailsford v. Brailsford, the deceased's personal representative brought a claim for breach of fiduciary duty, along with nine (9) other causes of action, on behalf of the deceased's estate. Id. at 446 n. 2, 669 S.E.2d at 344 n. 2. The Brailsford Court held that "insomuch as any of [the personal representative's] causes of action are essentially a cause of action for fraud

5

simply disguised under a different title, such actions do not survive [the deceased's] death." Id. at 450, 669 S.E.2d at 345.  In Ferguson v. Charleston Lincoln Mercury, Inc., 349 S.C. 558, 565, 564 S.E.2d 94, 97-98 (2002), the South Carolina Supreme Court held that the deceased's cause of action under the "Dealer Act" did not survive his death since "[t]he essence" of the allegations as to the defendant's conduct amounted to misleading the deceased and concealing overcharges intentionally or by gross negligence.

Here, the Fiduciary Duty claims clearly fit within the ambit of fraudulent or deceptive conduct.[4]  They are based on allegations that Shirley, while employed by CCM, 1) was "clandestinely" planning to form a business to compete with CCM; 2) was secretly working for, and devoting resources toward, Eventelope; 3) was "surreptitiously" and "clandestinely" gathering CCM information without permission for the purpose of using it for his competing business; 4) was soliciting CCM customers, vendors, and employees for this competitor; and 5) was diverting opportunities and resources for the benefit of these businesses and himself.[5]  The essence of these claims is that Shirley was giving CCM the impression that he was a devoted, full-time CCM employee, but was really using CCM resources and information for another

---

[4] Defendants vigorously dispute these claims.  However, as set forth in Brailsford and Ferguson, the alleged conduct is what must be considered in determining whether the claims fit within the ambit of deceptive conduct.

[5] See, e.g., 3rd Am. Comp. at ¶¶30-45, ¶71, ¶84, ¶¶97-104, ¶¶108-20, ¶¶124-29, ¶¶205-17 (Doc. 502); Uhlig's Status Report (Doc. 632) (alleging that "Shirley clandestinely organized Prism to compete directly with CCM and Uhlig."); Uhlig's Motion to Compel pp. 5-6 (Doc. 122) (alleging that Shirley took "thousands of pages" of CCM information that he spent time "surreptitiously gathering and downloading."); Uhlig's Memo. Supp. Mot. to Allow Evid. p. 8 (alleging that "[t]he knowledge and information Prism had, however, belonged to Uhlig and was clandestinely stolen from Uhlig in violation of numerous legal obligations, as set forth in Plaintiffs' Third Amended Complaint."); id. p. 3 (alleging "the clandestine theft of thousands of documents, containing CCM/Uhlig's confidential, proprietary information, that Defendant Shirley orchestrated while he was a trusted, senior level management employee of CCM."); Memo. Opp. to Mot. Summ. J. p. 4 (Doc. 560) (alleging that CCM's president first became aware of Eventelope shortly before he left in fall 2007 and that he told Shirley he could not work for Eventelope and remain a full time employee).

business and for the purpose of forming a competitor of CCM. From the very outset of this lawsuit to now, Uhlig has consistently characterized this alleged conduct as a "scheme" orchestrated by Shirley and in its own words has referred to the alleged conduct as "a deliberate pattern of deception . . ." [Doc. 5-1 p. 1; see also Doc. 101 p. 6; Doc. 123 p. 2; Doc. 632 p. 4].

These allegations clearly fit within the ambit of deceptive conduct. Consequently, they cannot be assigned. For these reasons, Defendants respectfully submit that Uhlig does not have standing to assert claims for breach of fiduciary duties that Shirley owed to CCM and summary judgment to CCM is inappropriate on this issue.[6]

### C.   The Basis of the Court's Ruling

The Court also noted "[m]oreover, Shirley filed no response and made no arguments which countered CCM's arguments supporting Uhlig's standing to assert [the Fiduciary Duty claims]." [CCM Order p. 6]. However, these issues, which are legal in nature, were addressed in Defendants' own Motion for Summary Judgment (Doc. 545 pp. 48-51). In ruling on Defendants' Motion for Summary Judgment, the Court found that Uhlig has standing to assert the Fiduciary Duty Claims and that such claims are assignable. However, the Court did not address the issue of whether the Fiduciary Duty claims fit within the ambit of deceptive conduct.

---

[6] Defendants recognize that this Court also found that Shirley owed a duty to Uhlig as a leased employee. Regardless of this finding, a ruling is still ripe as to the assignability of the Fiduciary Duty Claims. For example, it is undisputed that Shirley could not have owed a fiduciary duty to Uhlig prior to February 29, 2008. [See Doc. 560 p. 58, arguing that Shirley owed Uhlig a fiduciary duty "beginning on February 29, 2008."]. If the claims for breach of fiduciary duties owed to CCM are not assignable, then Shirley cannot be liable to Uhlig for any breach that occurred prior to February 29, 2008 (and, as stated in their motions for summary judgment, Defendants are entitled to summary judgment as to CCM on the breach of fiduciary duty claims since CCM ceased operations on February 29, 2008 and has suffered no damages. [See Doc. 545-1 p. 51 n. 43; see also Cooper Dep. p. 157 ll. 12-20 (Doc. 356-2, Doc. 558-12)]. In other words, even if Shirley did owe a fiduciary duty to Uhlig, the alleged breaches would be limited to the time period between February 29, 2008 and March 10, 2008.

7

Defendants respectfully ask this Court to amend its ruling on this issue and hold that CCM could not assign its Fiduciary Duty claims since they fit within the ambit of deceptive conduct.

**II      Shirley's Abuse of Process Claim against CCM**

The Court held that Shirley could not maintain his claim against CCM because he failed to establish an ulterior motive. [CCM Order p. 8]. The Court found that the deposition of CCM's corporate designee is the only evidence that CCM intervened and asserted claims against Shirley "solely for the ulterior purpose of receiving a release from Uhlig" as to claims Uhlig might have against CCM. [Id. at 7-8]. However, Shirley also pointed to the Joint Interest Agreement (which is a part of the record) pursuant to which CCM agreed to intervene in this action and assert claims against Defendants in exchange for a release of claims from Uhlig. [Doc. 558 p. 16 (citing Doc. 547-21 ¶¶7-8); see id. at p. 42 (citing Doc. 547-21 ¶¶7-8)]. It appears that the Court did not consider the Joint Interest Agreement in determining whether CCM acted with an ulterior purpose.

Without considering the Joint Interest Agreement, the Court stated that CCM had a "legitimate purpose for joining the suit- to resolve the question concerning Uhlig's standing to assert rights or claims in this lawsuit." [CCM Order p. 8]. However, resolution of Uhlig's standing to assert rights or claims was not the basis for CCM joining the suit, and could not have been the basis for CCM joining the suit. As Shirley pointed out in opposing CCM's intervention, resolution of Uhlig's standing to assert rights or claims is not a valid basis to allow CCM to intervene since Uhlig can adequately protect this interest on its own. See Doc. 98 pp. 4-5; See Feller v. Brock, 802 F.2d 722, 729 (4th Cir. 1986) (stating that a party seeking to intervene as of right must show that its "interest is not adequately represented by the existing parties."); Va v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976) ("when a party seeking

intervention has the same ultimate objective as the party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance."); see also Fed. R. Civ. P. 20 ("Persons may join in one action as plaintiffs if (A) *they assert any right to relief* jointly, severally . . .") (emphasis added). In response, CCM asserted that the purpose of its intervention was "to assert any claims in intervention for which the Court were to find that Uhlig lacks standing." [Doc. 109 p. 1; id. p. 4]. Moreover, it sought to intervene as a plaintiff and "adopt" the complaint. [Doc. 87 p. 2]. If its purpose was simply "to resolve the question concerning Uhlig's standing to assert rights or claims in this lawsuit", then there was no reason for it to join as a plaintiff and adopt the complaint.

Consequently, the purpose of CCM's intervention was to assert claims for which Uhlig lacks standing, and CCM did adopt the complaint and assert these claims. The problem is that CCM brought these claims despite the fact that it did not suffer any damages- as admitted by its corporate representative. [Cooper Dep. at 157:16-17 (Doc. 558-21)]. As further evidence of its lack of interest in asserting the Joint Interest Agreement requires CCM to assign to Uhlig any recovery that CCM received from these claims. [Doc. 547-21 ¶10].

In sum, CCM did not- and could not- intervene to assert that Uhlig has standing since Uhlig was a party and could adequately protect that interest. Thus, the purported basis of CCM's intervention was to assert claims for which Uhlig lacked standing, but the problem with that basis is that CCM had no damages (as it concedes). *Moreover, it is assigning any recovery it seeks in this action to Uhlig per the Joint Interest Agreement*. [Doc. 547-21 ¶10]. It had no interest in asserting these claims, other than obtaining its release from Uhlig.

Shirley respectfully submits that a reasonable juror could find, in light of the Joint Interest Agreement, that CCM acted purely with the ulterior purpose of gaining a release from Uhlig. Therefore, summary judgment on this claim is not appropriate.

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request this Court to reconsider and alter its order granting CCM summary judgment, as set forth herein, and to issue an amended order denying CCM's Motion for Summary Judgment as to 1) CCM's assignment of the Agreement under the APA, 2) Uhlig's standing to assert claims for breach of fiduciary duties that Shirley owed to CCM, and 3) Shirley's counterclaim for abuse of process.

**HAYNSWORTH SINKLER BOYD, P.A.**

*s/ Denny P. Major*

W. Francis Marion, Jr. Fed. ID #1117
Joshua L. Howard, Fed. ID #9196
Denny P. Major, Fed. ID #10225
75 Beattie Place
Post Office Box 2048
Greenville, SC 29602
(864) 240-3200
(864) 240-3300 (facsimile)
fmarion@hsblawfirm.com
jhoward@hsblawfirm.com
dmajor@hsblawfirm.com

ATTORNEYS FOR DEFENDANTS
Eventelope, LLC, John Adam Shirley, and Prism Content Solutions, LLC.

April 22, 2011
Greenville, South Carolina