# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| UHLIG LLC, | ) |
| Plaintiff, | ) Civil Action No. 6:08-cv-01208-JMC |
| v. | ) **OPINION AND ORDER** |
| JOHN ADAM SHIRLEY, PRISM CONTENT SOLUTIONS, LLC, | ) |
| Defendants. | ) |

This matter is before the court on Plaintiff Uhlig, LLC's ("Uhlig") Motion for Permanent Injunction [1002] and Defendants John Adam Shirley ("Shirley") and Prism Content Solutions, LLC's ("Prism" and together with Shirley, "Defendants") Motion to Dissolve Preliminary Injunction [Doc. 1010]. For the following reasons, the court grants in part and denies in part both motions.

## BACKGROUND

Uhlig is in the business of designing and creating newsletters for residents of multi-unit residential and apartment complexes and franchise businesses throughout the United States. On February 29, 2008, Uhlig acquired substantially all of the assets of Cox CustomMedia, Inc. ("CCM") and CCM's corporate parent, Cox Newspapers, Inc. Prior to Uhlig's acquisition of CCM, Shirley was employed by CCM as its Vice President and as CCM's highest paid full-time employee. As a result of the acquisition, CCM ceased all active operations but agreed to retain all employees, including Shirley, for a period of up to four months to permit the orderly transition of its accounts to Uhlig. At the beginning of the transition period, Shirley continued acting as the Vice President, with access to all CCM information. However, Shirley abruptly resigned in March 2008 and began

1

a competing business, Defendant Prism Content Solutions, LLC. Shortly after Shirley's resignation, Uhlig discovered that Shirley had copied certain customer information from company computer files.

On April 3, 2008, Uhlig filed suit against Defendants, alleging that Shirley was using trade secrets and confidential information of CCM to solicit CCM's customers and unfairly compete against Uhlig. Uhlig asserted, *inter alia*, causes of action for misappropriation of trade secrets, breach of employment agreement, tortious interference with employment agreements, breach of fiduciary duty and/or duty of loyalty, aiding and abetting breach of fiduciary duty and/or duty of loyalty, and tortious interference with prospective contractual relationships.[1]

On August 5, 2008, the court issued an order setting forth a preliminary injunction ("Preliminary Injunction Order") [Doc. 89] in this case on the terms outlined in the two separate Reports and Recommendations ("Reports") [Docs. 51 and 71] issued by the Magistrate Judge. The Preliminary Injunction Order, by incorporating the Reports, acknowledged that Defendants were entitled to fairly compete with Uhlig, but enjoined Defendants from soliciting certain customers and enjoined Defendants from using trade secrets or confidential information belonging to Uhlig. The Preliminary Injunction Order also contained additional requirements concerning the return of information and documents to Uhlig and concerning several evidence preservation issues.

The matter was tried by jury in December 2011. The jury returned a verdict in favor of Uhlig on all claims. The motions currently before the court involve a dispute between the parties as to

---

[1] Uhlig originally asserted several other causes of action against Defendants and various third-parties. Prior to trial, the court disposed of some claims on the parties' respective summary judgment motions. Uhlig also withdrew claims against all other defendants prior to trial and submission of the matter to the jury.

whether Uhlig is entitled to any form of continuing injunctive relief in light of the jury verdict awarding damages in favor of Uhlig.

## DISCUSSION

The issue of injunctive relief has been highly contested between the parties since the commencement of this litigation. Against objections by Defendants, this court entered the Preliminary Injunction Order which Defendants now seek to dissolve on the grounds that injunctive relief is neither appropriate nor justified under the circumstances of this case. Uhlig, on the other hand, now requests that this court convert the Preliminary Injunction Order into a permanent injunction. Specifically, Uhlig seeks a permanent injunction including: 1) an express finding that Defendants have not fairly competed with Uhlig; 2) a prohibition on Defendants' ability to directly or indirectly solicit or provide services to the customers to which the misappropriated information refers; 3) a requirement that Defendants return any documents currently in their possession that contain trade secret or confidential information belonging to Uhlig which has not previously been returned to Uhlig; 4) a requirement that all electronic data storage devices placed into escrow pursuant to the Preliminary Injunction Order be given to Uhlig or destroyed; and 5) a prohibition on Defendants' disclosure and use of the misappropriated information. Uhlig asserts that this relief is necessary to prevent Defendants from causing further injury to Uhlig and to prevent Defendants from benefitting from their wrongful conduct. For the reasons below, the court finds that the permanent injunctive relief as requested by Uhlig is too broad and not warranted in this case. However, the court does find it appropriate to continue limited injunctive relief prohibiting Defendants from using the trade secrets and confidential information at issue in this case.

South Carolina law authorizes injunctions against actual or threatened misappropriation. *See* S.C. Code Ann. § 39-8-30(C) (2012) ("A person aggrieved by a misappropriation, wrongful disclosure, or wrongful use of his trade secrets may bring a civil action to recover damages incurred as a result of the wrongful acts and to enjoin its appropriation, disclosure, use, or wrongful acts pertaining to the trade secrets."). Injunctive relief is an equitable remedy which may be imposed in the discretion of the trial court. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

> A plaintiff seeking a permanent injunction must demonstrate:
>
> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.*[2] This four-factor test should be applied by the court in the exercise of its equitable discretion on a case-by-case basis, without strict reliance on any bright-line rule. *Id.* at 395-96.

**Irreparable Injury and Adequacy of Remedies Available at Law**

A plaintiff seeking a permanent injunction must show that it has suffered an irreparable injury and that it does not have an adequate remedy at law. *Id*. at 391. "A showing of irreparable harm is required for the imposition of any injunctive relief, preliminary or permanent. To establish irreparable harm, the injury alleged must be one requiring a remedy of more than mere money damages." *Ford v. Reynolds*, 316 F.3d. 351, 355 (2d Cir. 2003) (internal citations and quotation marks omitted). "[T]he mere fact that a plaintiff may recover damages does not negate his right to injunctive relief." *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 128 (4th Cir. 2011)

---

[2]Neither Uhlig nor Defendants addressed the well-established four-factor test in their motions and memoranda.

(citing *Lyons P'ship, LP v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001)). Where monetary damages are difficult to ascertain, remedies at law are generally inadequate. *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994).

In support of its request for permanent injunctive relief, Uhlig primarily cites case law which substantially relies on the presumption of irreparable harm upon a finding of wrongdoing in cases concerning the misappropriation of trade secrets or confidential information. However, the United States Supreme Court effectively abrogated the presumption of irreparable harm in its decision *eBay Inc. v. MercExchange, L.L.C. See eBay Inc.*, 547 U.S. at 393 (admonishing courts to apply the equitable factors in exercising their discretion to impose injunctive relief and to avoid "categorical rule[s]"). Additionally, Uhlig does not directly reference any particular irreparable injury. Instead, Uhlig repeatedly argues that an injunction should issue to prevent unauthorized disclosure and use of its trade secret and confidential information. Uhlig also argues that Defendants should be prohibited from soliciting certain customers because there is no way for Uhlig to be certain that Defendants will not use the wrongfully obtained information in the solicitations.

Although the court understands Uhlig's frustrations, the court does not find that Uhlig has been irreparably harmed. Uhlig presented evidence at trial regarding the loss of the opportunity to transition some of CCM's existing and prospective customers to Uhlig as a result of Defendants' misappropriation. However, the evidence in the record demonstrates that Uhlig readily quantified the damages caused by Defendants' wrongful conduct. Uhlig presented a substantial amount of testimony from its expert witness concerning the monetary valuation of such lost opportunities which included future damages. Uhlig further received a verdict in its favor awarding substantial damages for each cause of action tried against Defendants.

5

It is also worth noting that the circumstances of this case are not typical of a trade secret misappropriation case. The trade secret and confidential information at issue in this case did not concern the type of technical or sensitive information which usually warrants injunctive relief to ensure adequate protection of the information. Instead, the case concerns a compilation of customer and market data, which was acquired by Uhlig during the time of Defendants' misappropriation. The customer relationships at issue in this case were relationships that existed between the respective customers and CCM. While Uhlig had an interest in the intellectual property and customer relationships of CCM by virtue of the acquisition, Defendants did not misappropriate any confidential information originating from Uhlig. What Uhlig actually lost as a result of Defendants' actions was the value of its acquisition target. Because Uhlig's loss was ascertainable, the remedy at law seems adequate to compensate it for the loss.

Additionally, the bulk of Uhlig's case against Defendants focused on the existence and value of the trade secrets as of March 2008, when Shirley began his competing business. There was little, if any, evidence presented at trial concerning Defendants' current and continued use of the trade secret and confidential information at issue in this case. In fact, because this court issued a preliminary injunction very early in this litigation, Defendants' access to the trade secrets and confidential information was substantially curtailed and Uhlig has not alleged nor presented any evidence of continued use. Therefore, Uhlig has not demonstrated irreparable harm which would justify the permanent injunctive relief requested.

**Balance of Hardships and Public Interests**

The court must also consider the balance of hardships between the litigants and the impact on the public at large prior to issuing an injunction. In making this determination, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "In granting injunctive relief, a court must also pay particular regard for the public consequences of employing the extraordinary remedy of injunction. Where the harms of a particular injunctive remedy outweigh the benefits, a court may decline to adopt it." *Nat'l Audubon Soc'y v. Dep't of Navy*, 422 F.3d 174, 201 (4th Cir. 2005) (internal citations and quotation marks omitted).

Uhlig asserts that permanent injunctive relief is appropriate to protect it from Defendants' use of the information to gain an unfair commercial advantage. Uhlig argues that Defendants should not be allowed to continue benefitting from trade secrets and confidential information which they wrongfully procured.

Defendants contend that the permanent injunctive relief requested by Uhlig – particularly, the request for a prohibition against Defendants' solicitation of certain customers – would unnecessarily inhibit Defendants' rights and ability to fairly compete in the marketplace. Defendants further urge the court to consider whether the trade secrets and confidential information have any relevance or current value in the marketplace given that the information concerns outdated customer preferences and pricing.

South Carolina law recognizes a strong public policy favoring an employee's right to work and earn a living in his trade after a separation from his former employer, provided that the employee

does not misuse the confidential information of his former employer. The South Carolina Court of Appeals has noted that

> the right of an individual to follow and pursue the particular occupation for which he is best trained is a most fundamental right. Our society is extremely mobile and our free economy is based upon competition. One who has worked in a particular field cannot be compelled to erase from his mind all of the general skills, knowledge and expertise acquired through his experience. These skills are valuable to such employee in the market place for his services. Restraints cannot be lightly placed upon his right to compete in the area of his greatest worth.

*Carolina Chem. Equip. Co., Inc. v. Muckenfuss*, 322 S.C. 289, 294-95, 471 S.E.2d 721, 724 (Ct. App. 1996) (quoting *ILG Indus. v. Scott*, 49 Ill.2d 88, 93-94, 273 N.E.2d 393, 396 (1971)).

Additionally, the United States Court of Appeals for the Fourth Circuit recently cautioned against the use of broad permanent injunctions. The court stated:

> It is well established that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs. To be sure, an injunction should be carefully addressed to the circumstances of the case. In other words, the court will vacate an injunction if it is broader in scope than that necessary to provide complete relief to the plaintiff or if an injunction does not carefully address only the circumstances of the case.

*PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 128 (4th Cir. 2011) (internal citations and quotation marks omitted).

While the court agrees that Defendants cannot be allowed to use the information they misappropriated, the court finds that the imposition of permanent injunctive relief which bans Defendants from soliciting customers or servicing customers without the use of those trade secrets goes too far. Defendants should have the opportunity to fairly compete with Uhlig, and the injunctive relief requested by Uhlig simply places too much restraint on Defendants' ability to do so.

Furthermore, the court questions the extent of the harm to Uhlig which would result from the court's refusal to enter the requested injunction. Although neither party has presented the court with sufficient information for it to determine the current value or relevance of the trade secrets and confidential information, there is no dispute that this information relates to customer preferences and pricing for products offered by a company that ceased to exist more than four years ago. To the extent that Defendants used the information to gain a competitive advantage over Uhlig four years ago during the acquisition transition period, such damage has been done and adequately compensated by the jury's verdict in favor of Uhlig. It is unlikely that the same information holds the same competitive advantage today.

Upon thorough consideration of the parties' arguments, the court finds that the balance of hardships and effect on public interest weighs against the issuance of the permanent injunction requested by Uhlig. The court is particularly concerned about Uhlig's request that the court enjoin Defendants' solicitation and service of certain customers. Uhlig has not convinced the court that Defendants are incapable of soliciting or servicing the customers at issue without the use of the trade secrets and confidential information. In fact, Defendants have serviced at least some of the customers for several years since the entry of the court's Preliminary Injunction Order which allowed such solicitation. Issuing a permanent injunction which indefinitely prohibits Defendants from soliciting and servicing customers as Uhlig suggests would be overly burdensome on Defendants and would unnecessarily interrupt the businesses of the customers who are currently being serviced by Defendants. Accordingly, the court determines that Uhlig has not demonstrated that it is entitled to the requested injunctive relief.

**Status of Preliminary Injunction Order**

Notwithstanding the foregoing analysis, the court does find that it is appropriate to continue the Preliminary Injunction Order to the extent that it requires Defendants to refrain from disclosure or use of the trade secrets at issue in this case. South Carolina statutory law provides:

> Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation. Such reasonable period of time shall take into account the average rate of business growth that would have been gained from nonmisappropriated use of the misappropriated trade secret.

S.C. Code Ann. § 39-8-50(A) (2012).

Defendants argue that Uhlig failed to make the requisite showing of the existence of a trade secret at trial; therefore, the preliminary injunction should be vacated in its entirety. However, the jury found that Uhlig had proven the existence of trade secrets and awarded damages for the misappropriation of those trade secrets. To prevail on their request to vacate the portion of the Preliminary Injunction Order addressing the disclosure and use of the trade secrets and confidential information, Defendants must show that the trade secrets no longer exist. However, Defendants have failed to present any evidence to support their contention that the trade secrets no longer exist. Therefore, the court will not vacate this portion of the Preliminary Injunction Order and it shall remain in effect until such time as Defendants can prove the trade secrets do not exist.

## CONCLUSION

For the reasons set forth above, Plaintiff Uhlig, LLC's Motion for Permanent Injunction [1002] and Defendants John Adam Shirley and Prism Content Solutions, LLC's Motion to Dissolve

Preliminary Injunction [Doc. 1010] are **GRANTED IN PART AND DENIED IN PART**. The court will continue to enjoin Defendants as follows:

> Defendants and all persons acting on their behalf or on behalf of any company in which they have any ownership, employment relationship, or business affiliation shall immediately cease and desist from using or disclosing for any purpose any and all information, documents, files, and data designated as a trade secret pursuant to South Carolina Code of Laws § 39-8-20 by Uhlig and not excluded from such designation by previous order of the court. *See* Opinion and Order on Defendants' Renewed Motion for Partial Reconsideration of Order on Defendants' Motion for Summary Judgment dated November 16, 2011 [Doc. 910].

The court denies Uhlig's request for further injunctive relief. The court grants Defendants' request to dissolve the Preliminary Injunction Order to the extent that it affords any injunctive relief beyond that provided herein.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

June 27, 2012
Greenville, South Carolina