**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | | |
|---|---|---|
| UHLIG, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 6:08-cv-01208-JMC |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| JOHN ADAM SHIRLEY, PRISM | ) | |
| CONTENT SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is currently before the court on Plaintiff Uhlig, LLC's ("Uhlig") Motion for

Award of Attorneys' Fees and Exemplary Damages [Dkt. No. 1003] seeking $4,541,235.70[1] in

attorney and paralegal fees and a punitive damages award of double the jury verdict on the claim

for misappropriation of trade secrets. Having carefully considered this motion, the record in this

case, and the applicable law, the court grants Uhlig's request for legal fees as provided herein and

denies Uhlig's request for punitive damages.

## FACTUAL AND PROCEDURAL BACKGROUND

Uhlig is in the business of designing and creating newsletters for residents of multi-unit

residential and apartment complexes and franchise businesses throughout the United States. On

February 29, 2008, Uhlig acquired substantially all of the assets of Cox CustomMedia, Inc.

---

[1]Uhlig originally sought $4,665,215.00 in attorney and paralegal fees but amended its request
in its Memorandum in Opposition to Defendants' Supplemental Response to Plaintiff's Supplement
to Motion for Award of Attorneys' Fees [Dkt. No. 1084-1]. Uhlig specifically agreed to reduce its
request in the amount of $123,979.30 representing the costs Defendants identified as related to the
interlocutory appeal in this case, the prosecution of claims against Defendant Eventelope, and an
adjustment attributed to time billed for travel.

("CCM") and CCM's corporate parent, Cox Newspapers, Inc. Prior to Uhlig's acquisition of CCM, Defendant John Adam Shirley ("Shirley") was employed by CCM as its vice president and as CCM's highest paid full-time employee. As a result of the acquisition, CCM ceased all active operations but agreed to retain all employees, including Shirley, for a period of up to four months to permit the orderly transition of its accounts to Uhlig. At the beginning of the transition period, Shirley continued acting as the vice president, with access to all CCM information. However, Shirley abruptly resigned in March 2008 and began a competing business, Defendant Prism Content Solutions, LLC ("Prism" and together with Shirley, "Defendants"). Shortly after Shirley's resignation, Uhlig discovered that Shirley had copied certain customer information from company computer files.

On April 3, 2008, Uhlig filed suit against Defendants alleging that Shirley and Prism were using confidential and trade secret information of CCM to solicit CCM's customers and unfairly compete against Uhlig. Uhlig twice amended its complaint and ultimately asserted causes of action for copyright infringement; violations of the Computer Fraud and Abuse Act, 18 U.S.C § 1030(g), and the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a); conversion; passing off and trademark infringement; civil conspiracy; misappropriation of corporate opportunity; misappropriation of trade secrets; breach of employment agreement; tortious interference with employment agreements; breach of fiduciary duty and/or duty of loyalty; aiding and abetting a breach of fiduciary duty and/or duty of loyalty; and tortious interference with prospective contractual relationships against Shirley, Prism, and various other individual and corporate defendants. CCM also intervened in the action for the limited purpose of ensuring that Uhlig had standing to seek effective relief for the alleged misconduct by Defendants regarding the employment

agreement between CCM and Shirley (the "Employment Agreement"). In response to Uhlig's complaint and CCM's intervention in the action, Defendants asserted various counterclaims against Uhlig and CCM.[2]

The matter was tried by jury in December 2011. The jury returned a verdict in favor of Uhlig on all claims and awarded damages.

## DISCUSSION

### Uhlig's Entitlement to Legal Fees

Under South Carolina law, "[a]ttorney's fees are not recoverable unless authorized by contract or statute." *See Jackson v. Speed*, 326 S.C. 289, 307, 486 S.E.2d 750, 759 (1997). Uhlig asserts that it is entitled to attorney's fees under: (1) the statutory provisions of the South Carolina Trade Secrets Act ("SCTSA"), S.C. Code Ann. § 39-8-10 (2012), *et seq.*; (2) an attorney's fees provision in the Employment Agreement; and (3) the South Carolina Sanctions for Frivolous Proceedings Act ("SCSFPA"), S.C. Code Ann. § 15-36-10 (2012), *et seq.* The court finds that an award of reasonable attorney's fees is warranted only under the statutory provisions of the SCTSA.

#### A. Attorney's Fees Pursuant to the South Carolina Trade Secrets Act

The SCTSA provides that "the court may award reasonable attorney's fees to the prevailing party" if "(1) a claim of misappropriation is made in bad faith, (2) a motion to terminate an

---

[2]Prior to trial, the court disposed of some claims on the parties' respective summary judgment motions. The causes of action submitted to the jury included Uhlig's claims for misappropriation of trade secrets, breach of employment agreement, tortious interference with employment agreements, breach of fiduciary duty and/or duty of loyalty, aiding and abetting breach of fiduciary duty and/or duty of loyalty, and tortious interference with prospective contractual relationships. Defendants tried their counterclaims against Uhlig concerning certain copyright matters, but the court disposed of those counterclaims on the parties' respective motions for a directed verdict. Uhlig also withdrew claims against all other defendants prior to trial and submission of the matter to the jury.

injunction is made or resisted in bad faith, or (3) willful misappropriation exists." S.C. Code Ann. § 39-8-80 (2012). The Supreme Court of South Carolina has previously found that a prevailing party is "one who successfully prosecutes an action or successfully defends against it, prevailing on the main issue, even though not to the extent of the original contention [and] is the one in whose favor the decision or verdict is rendered and judgment entered." *Sloan v. Friends of Hunley, Inc*., 393 S.C. 152, 157, 711 S.E.2d 895, 897 (2011) (citing *Heath v. Cnty. of Aiken*, 302 S.C. 178, 182–83, 394 S.E.2d 709, 711 (1990)). "A court determines the prevailing party by evaluating the degree of success obtained." *Heath*, 302 S.C. at 183, 394 S.E.2d at 711.

In this case, Uhlig was the prevailing party at trial as to each cause of action submitted to the jury, including claims for breach of employment agreement, tortious interference with employment agreements, breach of fiduciary duty and/or duty of loyalty, aiding and abetting a breach of fiduciary duty and/or a duty of loyalty, and tortious interference with prospective contractual relationships. Uhlig also survived summary judgment on a number of claims that were not pursued at trial for tactical reasons, including copyright infringement, violations of the Digital Millennium Copyright Act, conversion, passing off and trademark infringement, civil conspiracy, and misappropriation of corporate opportunity.

Additionally, the evidence in the record supports a finding that Defendants' actions were willful. Willfulness means "voluntary and intentional, but not necessarily malicious." Black's Law Dictionary (9th ed. 2009). During trial, Uhlig presented a significant amount of evidence demonstrating that Shirley took a substantial amount of confidential and trade secret information with him upon his resignation from his employment with CCM. Uhlig also presented evidence through Amanda Dorsey's testimony and expert testimony which showed that Shirley knowingly

and intentionally took CCM information with him upon his resignation. In fact, Shirley himself admitted that he knowingly retained information in his possession after he resigned from CCM which Uhlig has categorized as trade secret information. Moreover, the evidence demonstrated that Shirley's misappropriation was in violation and breach of his fiduciary responsibilities as a corporate officer of CCM. The court finds that this evidence, in addition to other evidence deduced at trial, adequately supports a finding of willfulness warranting an award of attorney's fees under the statute.

**B. Attorney's Fees Pursuant to the Employment Agreement**

Uhlig further asserts that it is entitled to attorney's fees under Shirley's Employment Agreement. The Employment Agreement provides that "in the event of any litigation arising in connection with the enforcement of this Agreement, the attorney's fees of the prevailing party shall be paid by the other party hereto, unless a court otherwise awards." Shirley Employment Agreement, at ¶ 13 [Dkt. No. 76-1, ¶ 13].

"When a contract exists, the award of attorney's fees is left to the discretion of the trial judge and will not be disturbed unless an abuse of discretion is shown." *Am. Fed. Bank, FSB v. Number One Main Joint Venture*, 321 S.C. 169, 467 S.E.2d 439 (1996) (citing *Smith v. Smith*, 264 S.C. 624, 216 S.E.2d 541 (1975)). In this case, Uhlig has elected not to recover under its claim against Shirley for breach of contract. Accordingly, the court may not award attorney's fees to Uhlig under the contractual provision in the Employment Agreement. *See Mary Kay Inc. v. Ayres*, 827 F. Supp. 2d 584, 589 (D.S.C. 2011) (noting that the plaintiff could not recover attorney's fees pursuant to a contract if the plaintiff elected a remedy other than breach of contract "[b]ecause a party cannot recover twice for the same wrong") (citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 335 (5th Cir. 2008) (finding plaintiff could not simultaneously recover attorney's fees under breach

of contract claim and lost profits pursuant to Lanham Act claim)).[3]

## C. Attorney's Fees Pursuant to the South Carolina Sanctions for Frivolous Proceedings Act

Uhlig alternatively requests an award of fees under the South Carolina Sanctions for Frivolous Proceedings Act. *See* S.C. Code Ann. § 15-36-10 (authorizing an award of attorney's fees in a civil action as a sanction against a party bringing frivolous pleadings, claims, or defenses). Specifically, Uhlig contends that it is entitled to fees associated with the litigation of Defendants' counterclaims, defenses to Uhlig's claims for breach of contract and breach of fiduciary duty, and costs arising from Defendants' entry into the Smith Hines Road facility.

The act allows a prevailing party to pursue sanctions against an attorney, party, or *pro se* litigant for a frivolous claim or defense where the court finds, by a preponderance of the evidence, that:

> (a) a reasonable attorney in the same circumstances would believe that under the facts, his claim or defense was clearly not warranted under existing law and that a good faith or reasonable argument did not exist for the extension, modification, or reversal of existing law;
>
> (b) a reasonable attorney in the same circumstances would believe that his procurement, initiation, continuation, or defense of the civil suit was intended merely to harass or injure the other party; or

---

[3]The court notes that its final award of attorney's fees as provided herein would be the same had Uhlig elected to recover under its cause of action for breach of contract instead of breach of fiduciary duty. This court has previously concluded that Uhlig's claim for breach of contract was duplicative of its claim for breach of fiduciary duty. This court has also found Uhlig's claim for misappropriation of trade secrets to be sufficiently distinct from the aforementioned causes of action to be independently recoverable. *See* Order on Defendants' Motion to Alter Judgment for Plaintiff to Elect and Preemption [Dkt. No. 1050]. However, the court recognizes that Uhlig's work on this litigation involved interrelated claims and counterclaims. Accordingly, the court has made its determination of the reasonable amount of fees to be awarded based on the interrelated nature of Uhlig's claims and Defendants' counterclaims in this case.

(c) a reasonable attorney in the same circumstances would believe that the case or defense was frivolous as not reasonably founded in fact or was interposed merely for delay, or was merely brought for a purpose other than securing proper discovery, joinder of proposed parties, or adjudication of the claim or defense upon which the proceedings are based.

S.C. Code Ann. § 15-36-10(C)(2012).

Although Defendants were not successful in pursuing their counterclaims and defenses in this case, the court does not conclude that their maintenance of the counterclaims and defenses warrant sanctions under the SCSFPA. Furthermore, although the court found that Defendants should have taken different actions in connection with the Smith Hines Road facility, the court does not find it appropriate to award Uhlig any attorney's fees associated with the Smith Hines Road facility as further detailed herein. *See also* Order on Plaintiff's Motion for Evidentiary Sanctions Precluding Defendants from Using the Smith Hines Road Materials [Dkt. No. 900].

**Amount of Fee Award**

Having determined that Uhlig is entitled to attorney's fees in this case, the court must now determine the reasonable amount of fees to award. *See In re Abrams & Abrams, P.A.*, 605 F.3d 238, 243 (4th Cir. 2010). The court's determination of the reasonableness of a fee award begins with the court's calculation of the lodestar figure. *See Robinson v. Equifax Info. Srvs.*, LLC, 560 F.3d 235, 243 (4th Cir. 2009). The lodestar amount is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Id.* The Fourth Circuit has adopted a twelve-factor test for making a lodestar determination. These factors include:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the

attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Robinson*, 560 F.3d at 243 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

The court may find that some of the factors are inapplicable; as such, these factors need not be strictly applied. *See E.E.O.C. v. Ser. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990).

Uhlig seeks fees for a combination of more than 15,000 hours of attorney time and 3800 hours of paralegal time. The court finds this request excessive and applies a sixty percent (60%) reduction to arrive at a reasonable fee award in the amount of $1,816,494.28.[4]

## 1. Time and labor expended

This case commenced in April 2008 and was tried some three and one-half years later in December 2011 in a jury trial which lasted approximately three weeks. As of the date of this order, the docket includes approximately 1084 entries comprised of numerous pretrial and post-trial motions resulting in more than two dozen substantive written opinion orders from the court. Despite what may be implied from the volume of the record, this case began and ended as a rather straight-forward claim against an employee for the misappropriation of non-technical trade secrets and confidential information from his employer. However, from the time this case was initiated, the parties have made this litigation as complicated, onerous and time-consuming as possible.

Upon review of Uhlig's time records, the court finds that Uhlig spent an inordinate amount of time on unnecessary and/or duplicative motions. Even a cursory review of the docket reveals that

---

[4]"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board-cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (*per curiam*).

the parties often initiated or opposed motions on matters which most litigants resolve by consent, including motions for extensions of time and motions to amend pleadings. The parties also refused to cooperate in discovery matters, often resorting to filing competing motions to compel and/or motions for protective orders.

One of the most time consuming disputes involved the breadth and scope of electronic discovery in this case. The court acknowledges that electronic discovery may interject an element of complexity into an otherwise routine matter. However, instead of resolving the issues related to the electronic discovery process through collaboration with their experts, each party held steadfast in their positions concerning the scope of electronic discovery without compromise which needlessly increased the costs of this litigation. After ultimately agreeing to a protocol for the examination of the electronic discovery, Uhlig later sought broader relief from the court to complete the electronic discovery process which, in the end, did not materially impact the case.[5] Although Uhlig would like the court to attribute all costs associated with such disputes to Defendants, the court does not find that to be a reasonable result given Uhlig's significant contribution to the disputes.

Additionally, as much as Uhlig wants to penalize Defendants for repetitively litigating issues that were already decided, Uhlig conducted this litigation in a similar manner by repeatedly offering arguments or making motions on matters that the court had previously rejected. For example, many of the arguments advanced in support of Uhlig's motions in limine had been addressed by the court in either its orders on the parties' summary judgment motions, the many motions to compel, or motions seeking to sanction Defendants. Even the instant motion exemplifies Uhlig's penchant for

---

[5]The court explains the history of the parties' dispute over discovery of electronic media in its Order on Uhlig's Motion to Modify Protocol for Conducting Examination of Defendants' Computers [Dkt. No. 767].

duplicative motions on matters previously decided – for example, knowing that the court found both parties responsible for the discovery debacle involving the Smith Hines Road facility, Uhlig still seeks to recover fees that the court previously found unwarranted.

The court is further troubled by the amount of time spent litigating whether and the extent to which Uhlig had to identify its trade secrets, especially considering that the identification of specific trade secrets is clearly required in trade secret litigation. Upon review of the record, the court finds that much of the time spent on research and motions filings related to the identification of Uhlig's trade secrets, including the time spent opposing Defendants' efforts to dispose of Uhlig's trade secrets claims, could have been significantly reduced or altogether avoided had Uhlig disclosed the nature of the trade secrets at issue earlier in the litigation. Although Uhlig has previously asserted that its efforts to identify its trade secrets were frustrated by Defendants' oppositional stance on discovery matters, the evidence presented at trial indicated that the majority, if not all, of Uhlig's final trade secret identifications contained references to materials within its possession since relatively early on in the case. While litigation is by definition adversarial, it need not be antagonistic or inimical. In short, the court declines to reward Uhlig for its considerable contribution to making this litigation more complicated and prolonged than necessary.[6]

---

[6]For a further example as to how Uhlig has contributed to the excessive litigation in this case, the court need look no further than the manner in which Uhlig proceeded with the instant motion. In its initial filing in support of its request for millions of dollars in legal fees, Uhlig submitted a conclusory memorandum with scant legal citation, little information from which the court could determine the qualification and experience of the legal professionals for which Uhlig requested fees, and no contemporaneous time records. Based on Uhlig's poorly supported motion, Defendants were required to file a response that was similarly conclusory and speculative. Then, instead of voluntarily supplementing the record with the necessary materials, Uhlig incurred additional expense seeking to avoid the production of information which courts routinely require. Uhlig produced its time records only after being ordered to do so by the court and insisted on spending countless hours redacting allegedly privileged information. This belated production spurred an additional round of

The court also finds that a reduction is appropriate because Uhlig failed to submit time records in a manner which would allow the court to determine the reasonableness of the time spent on various tasks performed in the course of the litigation. "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

In this case, Uhlig's time records include significant block billing which frustrates the court's effort to apportion fees. Block billing is a practice in which time records reflect many different tasks grouped together into one time entry as a unit, rather than the itemization of the time expended on individual tasks. *See U.S., ex rel. Abbott-Burdick v. Univ. Med. Assocs.*, C.A. No. 2:96-cv-1676-12, 2002 WL 34236885, at *16 n. 11 (D.S.C. May 23, 2002).

For example, Uhlig's lead counsel, Juliet Cox, submitted a time entry from April 11, 2008, for 5.20 hours with a narrative:

> Telephone conference with J. Howard and N. Nettles; draft letter following up on same; letter from J. Howard; draft additional letter to J. Howard and S. Mabry; telephone conference with A. Torrence; telephone conference with N. Nettles; telephone conference with M. Uhlig; outline strategy for proceeding to court on Monday; review motion for extension of time and confer with C. Woods regarding response to same.

In another entry, Ms. Cox recorded 6.3 hours of attorney time on October 16, 2009, for:

> Work on pleadings to be filed on Friday; review memoranda for Mr. Milgrim; emails with Mr. Milgrim regarding same; revise agreements regarding Lanham Act, covenants not to compete, and conversion; email exchanges with Mr. Milgrim regarding Lanham Act, covenants not to compete, and conversion.

---

briefing on the motion. Such has been the norm in the litigation of this case. The court simply cannot lay all responsibility for the costs of this litigation upon Defendants given the manner in which Uhlig chose to litigate this case.

These types of entries dominate the supporting documentation for the fee request and reflect the common manner in which Ms. Cox and the legal personnel under her direction often recorded time.

While the Gibbes Burton firm's use of block billing was not as prevalent, counsel initially lumped tasks for a given day in one multiple-hour entry without distinction for the amount of time devoted to any given task within the entry. It appears that the frequency with which the firm employed the practice of block billing diminished over time. However, Gibbes Burton also submitted many duplicative time entries for interoffice conferences and substantial time devoted to the review and revision of court filings over which Ms. Cox and her team had already labored for hours.

In addition, many of the entries contain vague descriptions of the tasks completed, relate to tasks which are clerical in nature, or involve multiple billings for conferences amongst co-counsel. A paralegal submitted a time entry occurring on April 23, 2009, seeking recovery for 2.0 hours of work which included tasks such as "clean up conference room" and "sent documents to the file." Likewise, another paralegal billed for tasks such as spending 10.5 hours on binder organization on April 20, 2010. Such time records do not afford the court an opportunity to make any assessment of the reasonableness of the amount of time spent on any single task, determine whether there was a duplication of effort, or evaluate whether the amount of time claimed is otherwise unnecessary or unreasonable.

The court finds it necessary to further reduce the fee amount requested in this case because Uhlig has requested substantial fees associated with Uhlig's pursuit of a modification of the protocol for forensic searches of electronic discovery which the court has previously found to be inappropriate. *See* Order on Uhlig's Motion to Modify Protocol for Conducting Examination of

Defendants' Computers [Dkt. 767]. In addition, Uhlig seeks fees that it incurred in pursuing claims against third parties. Although the court recognizes that Uhlig would not have litigated claims against the third parties absent Defendants' conduct, the court cannot overlook the fact that those claims rested on allegations separate and independent from the claims against Defendants. In fact, Uhlig has acknowledged the distinct nature of the third-party claims in its filings with this court. Furthermore, Uhlig entered into settlement agreements with the third parties conceding that it was not a prevailing party as to the third-party claims and agreeing that it would bear its own costs associated with bringing those claims.

Accordingly, this factor favors a reduction in the requested fee petition.[7]

## 2. Novelty and difficulty of the questions presented by the lawsuit

As discussed above, the primary subject matter of this litigation was not particularly complex. However, the litigation was rendered substantially more complex than required due to the parties constant battle over discovery and litigation over ancillary matters which did not involve Uhlig's main goal of protecting the trade secrets and confidential information it obtained through its acquisition of CCM. Adding to the complexity was Uhlig's position regarding the identification of the trade secrets and confidential information it sought to protect and Defendants' ever-evolving theory of the case during the litigation. While no single issue presented in this case was particularly complex in and of itself, the sheer number of claims and defenses added to the difficulties in this litigation. Accordingly, the court finds that this factor weighs in favor of awarding a reduced fee

_____

[7]Defendants have presented the court with a categorization of the time records submitted by Uhlig and arguments as to why each category requires a reduction in Uhlig's total fees requested. For the reasons stated herein, the court cannot accurately assess the propriety of the specific dollar amounts that Defendants claim as appropriate reductions. This circumstance further supports the court's use of a percentage reduction in the fee amount.

amount.

### 3. Skill required to properly perform the legal service

Given the contentious nature of this litigation, the court finds that Uhlig was justified in engaging knowledgeable, competent counsel to prosecute its claims against Defendants. However, the court has given some consideration to the fact that Uhlig engaged lead counsel located in Kansas to prosecute this case, which required the association of local counsel. Given the wealth of experience, knowledge, and capacity of various local firms, the court is not convinced that it was wholly reasonable and necessary to engage both law firms. This case concerned matters primarily based on South Carolina law with which South Carolina law firms would, presumably, be more familiar. While Uhlig was undoubtedly free to engage whomever it wanted to represent it, the court does not find it reasonable to tax Defendants with the entirety of the costs of Uhlig's choice. *C.f. Dr. Bernard Heller Found. v. Lee,* 847 F.2d 83, 88 (3d Cir. 1988) (finding that it was reasonable and necessary to engage New York law firm in matter because accounting malpractice claims require specialized experience not usually possessed by local counsel in the Virgin Islands).

### 4. Preclusion of other employment opportunities

The court finds that this factor does not affect the attorney's fees in this case. Although this case demanded much of Uhlig's counsel's time, counsel has represented that this matter was handled on the basis of an hourly fee arrangement. Accordingly, while counsel may have been precluded from handling other matters, counsel appears to have been compensated for the time spent on this case. This factor typically applies in circumstances where counsel was required to forgo some measure of compensation because of the time devoted to a case. *See e.g., Daly v. Hill*, 790 F.2d 1071, 1082 n.15 (4th Cir. 1986) (noting that the effect of pursuing a civil rights action on an

attorney's ability to do other potentially lucrative work may in some cases require an adjustment of the hourly attorney fee rate in order to fully compensate attorney).

### 5. Customary fee and nature of fee

From the commencement of the litigation to June 2009, Uhlig's lead counsel, Juliet Cox, was a partner with the firm of Sonnenschein Nath & Rosenthal, LLP (now SNR Denton). During this time, Ms. Cox's billing rate was $315.00 per hour. Ms. Cox represents to the court that other legal professionals with the Sonnenschein firm billed Uhlig for approximately 4,099 hours of work at the average rate of $264.00. After June 2009, Ms. Cox joined the firm of Kutak Rock, LLP and charged Uhlig a rate of $320.00 per hour for work performed by senior partners, $220.00 per hour for work performed by junior partners and associates, and $150.00 per hour for work performed by paralegals. Local counsel on this matter, Gibbes Burton, LLC, billed Uhlig at the rate of $250.00 for work performed by partners, $135.00 per hour for work performed by associates, and $80.00 per hour for work performed by paralegals. To support its request, Uhlig provided the court with affidavits from two prominent local attorneys who both attest that the requested rates are reasonable. Additionally, Uhlig cites this court's recent order in *Atkinson, et al. v. House of Raeford Farms, Inc.*, C.A. Nos. 6:09-cv-01901-JMC, 6:09-cv-03137-JMC, 2012 WL 2923246, at *3 (D.S.C. July 18, 2012), in which this court found that the rates of $300.00 per hour for partners and $200.00 per hour for associates were reasonable in the local market. Based on the affidavits provided by Uhlig in support of its petition, the court finds that the rates charged by counsel are well within the range of what attorneys in this market reasonably charge.

### 6. Attorney's expectations at the outset of the litigation

The court finds that this factor does not affect the attorney's fee in this case.

**7. Time limitations imposed by the client or circumstances**

The court finds that this factor does not affect the attorney's fee in this case.

**8. Amount in controversy and the results obtained**

A strong consideration for the court's award of fees in this case are the results obtained in this litigation. *See Brodziak v. Runyan*, 145 F.3d 194, 196 (4th Cir. 1998) (noting that the result obtained is an important factor in the lodestar calculation). Although Uhlig only presented six of its original thirteen claims to the jury, it received a verdict in its favor on all six claims. After its election of remedies, Uhlig's monetary damages award against Defendants totals more than $2,770,000.00. While this is an impressive recovery, the court must also consider that Uhlig sought more than $11,000,000.00 in monetary damages.

Additionally, Uhlig was only partially successful in obtaining the injunctive relief it sought. Since the inception of this litigation, Uhlig has attempted to enjoin Defendants' contact with certain customers and other broad injunctive relief. During the course of the litigation, Defendants were successful in invalidating the portions of the Employment Agreement which prohibited the solicitation of customers. After the jury trial, the court declined to impose restrictions on Defendants that would prevent them from soliciting any customer. However, the court permanently enjoined Defendants from using any of Uhlig's trade secrets or confidential information.

Finally, the court notes that Uhlig was very successful in defending against Defendants' counterclaims. The court granted summary judgment in Uhlig's favor on the majority of the counterclaims. Moreover, the court found that Defendants were not entitled to judgment in their favor on the only counterclaim that survived summary judgment – a copyright claim in which

Defendants sought a declaration concerning their rights to a source code.[8]

The results in this case, although favorable to Uhlig, were decidedly less than what Uhlig desired and anticipated. Accordingly, while giving Uhlig due credit for its success in obtaining a monetary award against Defendants and in defending against the counterclaims, the court finds that a reduction is appropriate to reflect that Uhlig sought far more than it achieved.

**9. The Experience, Reputation, and Ability of the Attorneys**

The experience, reputation, and ability of Ms. Cox, Mr. Gibbes, and Larry Fields – all of whom are partners at their respective firms with many years of litigation experience – is undisputed in this case. There is also little question that Debbie Mahan is highly experienced and qualified to perform services as a litigation paralegal. However, Defendants correctly argue that Uhlig has failed to provide any information regarding the qualifications of the remaining legal personnel for which Uhlig has requested fees. Uhlig simply informs the court that Ms. Cox and Mr. Gibbes utilized legal personnel at their discretion and indicates that "[m]ore detailed information regarding the qualifications of each can be provided if sought by the court." [Dkt. No. 1003, at 7]. It is not this court's responsibility to ferret out relevant facts and information to support Uhlig's fee request. Indeed, it is well-established that the party requesting fees bears the burden to adequately support the request. *See Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."). Despite Uhlig's failure to provide the court with sufficient information regarding each professional for which it seeks fees, the court recognizes that Ms. Cox, Mr. Gibbes, and the firms with which they are associated enjoy a laudable

---

[8]The court declined to make any assessment concerning Uhlig's ownership of the source code because that claim was not properly before the court.

reputation in the legal community and this court does not have significant concerns regarding the qualifications of the legal personnel utilized at each firm. Accordingly, the court will not make any adjustments to the fee request as a result of this factor.

**10. The Undesirability of the Case Within the Legal Community**

The court finds that this factor does not affect the attorney's fee in this case.

**11. Nature and length of the attorney's professional relationship with the client**

The court finds that this factor does not affect the attorney's fee in this case.

**12. Fee awards in similar cases**

Having reviewed the cases set forth by Uhlig, and considering its own experience in matters such as this, the court is of the opinion that the attorney's fees that Uhlig seeks are excessive in comparison to those fees awarded in similar actions. As discussed above, this case primarily concerned the misappropriation of non-technical trade secrets and confidential information by a former employee. The most complicating factors involved the use of electronic discovery which, but for the parties' litigation tactics, should not have substantially increased litigation costs in this matter. When looking at similar cases within this district where the court found it appropriate to award significant legal fees, those cases concern litigation of far more complicated and technical intellectual property claims than the claims at issue in this case. *See, e.g., Firehouse Restaurant Group, Inc. v. Scurmont LLC*, C.A. No. 4:09-cv-00618-RBH, 2011 WL 4943889 (D.S.C. Oct. 17, 2011) (reducing by fifty percent (50%) counsel's request for fees on more than 2000 hours of time spent litigating a complex trademark infringement matter over three years); *Super Duper, Inc. v. Mattel, Inc.*, C.A. No. 6:05-cv-1700-HFF-WMC, 2009 WL 866463 (D.S.C. Mar. 31, 2009) (finding a request for fees in the amount of $2,643,844.15 appropriate in a complex trademark and patent

infringement case litigated over more than three years and involving experienced in-state and out-of-state counsel).[9]  Even the cases cited by Uhlig in support of its fee request indicate that the amount of legal fees sought by Uhlig is excessive.  *See, e.g., Mattel, Inc. v. MGA Entertainment, Inc.*, 801 F. Supp. 2d 950, 958 (C.D. Cal. 2011) (awarding $2,172,000 in attorney's fees in a trade secret case in which the prevailing party was awarded $85 million in compensatory damages and $85 million in punitive damages); *ICE Corp. v. Hamilton Sundstrand Corp.*, 432 F. App'x. 732  (10th Cir. 2011) (affirming the district court's award of attorney's fees amounting to $1,134,438.25 where the party obtained a damages award in excess of $15 million for fraud and misappropriation of trade secrets).

Here, Uhlig submitted a request for fees which is significantly higher than requests made in similar cases.  Accordingly, the court finds that this factor weighs in favor of a reduced fee amount.

 After careful consideration of the parties' arguments, the court applies a sixty percent (60%) reduction to Uhlig's requested fee amount and finds the reasonable fee award in this case to be $1,816,494.28.  The court finds Defendants' additional arguments for further reductions to be substantially without merit.[10]

**Uhlig's Request for Exemplary Damages**

---

[9]The defendant, Mattel, Inc., was the prevailing party in the *Super Duper* case.  Although the monetary recovery was significantly less than Uhlig recovered in the instant case, the court notes that Mattel, Inc. successfully defended the numerous intellectual property claims brought against it by Super Duper.  The case is also instructive because it involved many complex intellectual property claims, but the parties completed that case using approximately one-third of the docket entries and one-third of the trial time of this case.  While Uhlig would suggest that its fee request is justified in comparison to the *Super Duper* case, the court finds just the opposite.

[10]Defendants contend that they are entitled to discovery concerning Uhlig's requested fees.  However, Defendants failed to provide any authority allowing such discovery under the circumstances of this case.  The court finds that Defendants have been afforded an adequate opportunity to meaningfully object to any fee amounts which they believe are unjustified.

Uhlig requests that the court award it exemplary, or punitive, damages for Defendants' willful misappropriation of trade secrets pursuant to S.C. Code. Ann. § 39-8-40(C). The court denies this request because this issue was properly submitted to the jury and the jury did not award Uhlig any exemplary damages on this claim.[11] *See Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 666 (4th Cir. 1993) ("in federal court, any award of punitive damages presents a factual question that must be resolved by the jury"). Although the court finds that there is sufficient evidence upon which it may determine that Defendants committed willful misappropriation of trade secrets, as discussed above, Uhlig has not presented the court with any basis upon which it would be appropriate to disregard the jury's finding on the issue of exemplary or punitive damages.

**Uhlig's Bill of Costs**

Uhlig seeks to have certain costs taxed against Defendants in this matter, including the costs incurred by Uhlig for fees to the Clerk of Court, service of summonses and subpoenas, witness fees, docket fees, and fees for depositions and related transcripts. *See* Uhlig's Amended Bill of Costs [Dkt. No. 1033-3]. Defendants object to Uhlig's Bill of Costs arguing that Uhlig seeks reimbursement for costs which are not recoverable. Upon review, the court finds that the costs sought by Uhlig are appropriate. *See* Local Civil Rule 54.03, D.S.C. Accordingly, the court awards Uhlig costs in the amount of $15,802.19.

## CONCLUSION

---

[11]Uhlig did not object to the submission of the issue of punitive damages to the jury on its SCTSA claim. Uhlig ultimately agreed to the use of the verdict form clearly instructing the jury to award punitive damages should they find such damages appropriate. Further, Uhlig did not object to the court's instruction to the jury that "[u]pon a finding of willful, wanton, or reckless disregard of Plaintiff's rights, you may also award separate exemplary or punitive damages in an amount not exceeding twice any award of damages." Trial Transcript, at 3762:13-16.

For the foregoing reasons, the court hereby **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Award of Attorney's Fees and Exemplary Damages [Dkt. No. 1003] as set forth above. The court awards attorney and paralegal fees in the amount of $1,816,494.28. The court also awards Uhlig its requested litigation costs in the amount of $15,802.19.

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

September 25, 2012
Greenville, South Carolina